(92 South. 214)

No. 24696.

## WOLBRETTE v. NEW ORLEANS DRUG CO.

(April 24, 1922. Rehearing Denied by Division B May 29, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Corporations** ⊜553(6) **— President's purchase of merchandise not readily salable or failure to consult stockholders held not ground for receivership.**

The error of judgment of the president of a drug corporation in purchasing merchandise usually carried in drug stores, and drugs not readily salable, and his failure to consult stockholders as it was understood he was to do when the stock was sold, did not, separately or together, afford ground for a receivership.

2. **Corporations** ⊜553(6)**—Acts of president designed to force other equal owner out of office held to require receivership.**

The acts of the president of a corporation, who owned one-half of the stock and through a dummy director controlled the board of directors, designed to force the other owner of the stock out of his office of secretary and treasurer and probably to force him to sever his connection with the corporation altogether, *held* an abuse of power and gross mismanagement, requiring the appointment of a receiver, under Act No. 159 of 1898, § 1, and not justified because the secretary and treasurer had issued two checks in payment of corporate debts without the president's signature or had absented himself from the company's place of business.

3. **Pleading** ⊜240 **— Oral amendment disregarded where it was objected to when offered.**

Where preferred stockholders intervening in a suit for a receiver took a neutral position, their verbal amendment, joining in the prayer for a receiver, objected to when offered, will be disregarded.

4. **Appeal and error** ⊜187(4) **— Intervention under which defendant permitted interveners to participate without objection not dismissed on appeal.**

Though preferred stockholders intervening in a suit for a receiver took a neutral position, where defendant permitted them to participate in the trial without excepting or objecting, and they did participate by questioning witnesses, the intervention will not be dismissed on appeal, especially where it does not change the result.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Suit by Jules Wolbrette against the New Orleans Drug Company. From a judgment appointing a receiver, defendant appeals. Affirmed.

See, also, 149 La. 434, 89 South. 406.

Denegre, Leovy & Chaffe and Jas. Hy. Bruns, all of New Orleans, for appellant.

Theodore Roehl, of New Orleans, for interveners, preferred stockholders.

Feitel & Feitel, of New Orleans, for appellee.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

OVERTON, J. Plaintiff, alleging himself to be a stockholder and creditor of the defendant, has filed this suit, praying that a receiver be appointed for it.

The petition sets forth, in substance, that W. R. Yates, president of the corporation,

made defendant herein, has arrogated to himself all of the powers to manage, purchase, and sell for the corporation; that he is grossly mismanaging its affairs, and is jeopardizing the rights of plaintiff, both as creditor and stockholder, as well as those of other creditors and of the holders of preferred stock; that he has committed acts ultra vires; and that, because of his incompetency and mismanagement, he has put the corporation in such condition that insolvency will ensue unless a receiver be appointed.

The petition sets forth in detail various acts that the pleader regards as showing that Yates has arrogated to himself the powers mentioned, that he has committed acts ultra vires, and mismanaged the corporate affairs, and is jeopardizing the rights of the stockholders. These, in so far as may be necessary to a decision of the case, will be brought out in the course of this opinion.

Thirty-one of the preferred stockholders intervened in the suit. In their intervention, they assume no decided position as to whether a receiver should be appointed, but submit the necessity for such an appointment to the court. They, however, pray that, should the court find it necessary to appoint a receiver, neither Yates, nor the plaintiff, but some disinterested person, familiar with the affairs of the drug business, should be selected.

The interveners allege that they have no vote in the corporation, that they have been kept in the dark as to its affairs, and know nothing of them, except a few facts which they have gathered from hearsay; that they have demanded a statement showing its condition; that, though 10 days have passed since the demand was made, the statement has not been received; that, if the facts alleged in plaintiff's petition are true, a receiver should be appointed; that, as plaintiff was secretary and treasurer, as well as a member of the board of directors, he also is chargeable with such mismanagement as

may have occurred, and with such improper acts as may have been committed; that, inasmuch as Yates and plaintiff are hopelessly apart in respect to the management of the corporation, and are in control, their rights as stockholders are being ground to pieces, as a result of the disagreement, and their investment endangered.

During the course of the trial, the interveners caused to be placed of record, in the note of evidence, a verbal statement, declaring that, after hearing the evidence of plaintiff and Yates, they desired to join the plaintiff in his action, and to pray for the appointment of a receiver. This amendment was allowed by the court over objection. In this court, the majority of the interveners have answered the appeal taken by defendant from the judgment appointing a receiver, praying that the judgment be affirmed, and have filed a brief in support of their contention. The remainder have withdrawn from further participation in the case.

### The Facts.

In so far as it is necessary to state the facts, they are as follows:

The defendant was incorporated in October, 1920, for the purpose of manufacturing and dealing in drugs, and for the purpose of buying and selling such other articles as are usually handled by drug stores. The capital stock of the corporation was fixed at $15,000, $10,000 of which was ordinary stock, and $5,000 preferred. Power was granted in the charter to increase each class of stock up to $500,000. Only the holders of ordinary stock were granted the right to vote at corporate meetings.

It seems to have been the understanding between plaintiff and Yates, prior to the organization of the corporation, that each should have 50 shares of the ordinary stock, thus absorbing all of it. However, in order to organize, plaintiff permitted Yates to transfer, or raised no objection to his doing

so, one of his shares to Aaron Hirschwitz, and the three organized the corporation, and constituted themselves the first board of directors, with Yates as president and plaintiff as secretary-treasurer.

It was the purpose, in organizing the corporation, to sell the preferred stock, at least as far as possible, to retail druggists, as the corporation proposed to do a wholesale business; and, in selling the stock to retailers, it was agreed that everything bought and paid for within the week following the purchase should entitle the purchaser to a discount of 5 per cent. It was further agreed not to allow any one except preferred stockholders this discount on purchases. As a further inducement to the retailers to purchase preferred stock, it was represented to them that those purchasing it would be consulted as to what articles should be purchased. This appears to have been a part of the general plan. Yates did the purchasing for the corporation; and, with the exception of the purchase of the original stock, it appears from the evidence of the preferred stockholders, who took the witness stand, that no such consultation was had.

As a result of this failure to consult the preferred stockholders, plaintiff alleges that a number of bad purchases were made, and a mass of evidence has been offered to establish the allegation. A number of those articles, it appears, were not well selected, and the evidence is conflicting as to others.

In the early part of April, 1921, after the corporation had been actually in business for two months, and after a quarrel had arisen between plaintiff and Yates, the latter made plaintiff an offer to purchase his stock, and asked him what he would take for it. Plaintiff announced his willingness to sell, but stated that he preferred for Yates to say what he would give for it. For some reason that is unknown, Yates went no further with the contemplated purchase.

A few days after the above offer was made, Yates called a meeting of the board of directors. Plaintiff, evidently fearing that the purpose of the meeting was to force him to sever his connection with the corporation, requested some of the preferred stockholders, by telephone, to be present, stating as a reason that matters were not proceeding as they should. At the appointed time several of the preferred stockholders appeared at the place of meeting, as did also plaintiff. Yates refused to hold the meeting, assigning as the reason therefor that the preferred stockholders had no right to be present when the board of directors met. He also refused to state the purpose of the meeting. A quarrel ensued between plaintiff and Yates, in which the former made some uncomplimentary remarks, and informed Yates that if the meeting of the board was held he would provoke a receivership. It seems that plaintiff's purpose, in so stating, was that he wished to have a meeting of the preferred stockholders, before the meeting of the directors, at which both he and Yates could discuss the entire situation. Yates finally postponed the meeting of the board indefinitely.

On the next day, however, the meeting of the board was held with two of the three members present; plaintiff being absent. At that meeting, the first thing done was to elect Hirschwitz (to whom Yates had transferred one of his shares of stock, in organizing the corporation) vice president, although the charter provided for no such office. When that was done, a motion was adopted declaring that, as the office of vice president has no salary attached to it, the sum of $10 a meeting be paid to nonsalaried officers attending sessions of the directors. This was evidently intended for Hirschwitz's benefit. A resolution was also passed authorizing the president alone to sign checks for the corporation and authorizing the bank to cash the checks so signed, and not otherwise. A similar resolution was also passed respecting the signing of notes. Prior to the

passage of that resolution, it was required by the directors that all checks be signed by the president and secretary-treasurer.

A resolution was also adopted, at the meeting, defining the duties of the secretary-treasurer, which provides that he shall attend to the clerical details of the corporation's business, incident to that position, and that he shall remain at the company's office from 9 a. m. till 12 m. and from 1 p. m. till 3 p. m. The purpose of the resolution is declared to be to have some one to direct the affairs of the corporation when the president is necessarily absent on its business, which, the resolution states, is frequently the case. The duties of the president, the only remaining officer created by the charter, were not defined, and, in so far as it appears, no attempt has ever been made to define them, nor were the duties of any one else connected with the company defined. At the organization of the corporation, it was understood that Wolbrette, because of other business interests he had, at least in the beginning, would be called upon to devote only a part of his time to the business.

As a witness in this case, Yates testified that the purpose of the meeting of the board was to define the duties of the secretary-treasurer, and to attend to certain financial matters. He further stated, in the course of his evidence, that Wolbrette was spending only a small part of his time each day attending to the duties of his office. He also testified that after the quarrel at the proposed meeting of the board, that was indefinitely postponed, it was discovered that two checks had been drawn and issued in the corporate name, and had been signed by plaintiff alone, as secretary-treasurer, instead of by him and the president, as the resolution then in force required. He stated that the action of the board, in adopting the resolution relative to checks, was influenced by that discovery and by the fact that Wolbrette at the quarrel had threatened a re-

ceivership. It may be said, on the other hand, that the checks were evidently drawn in settlement of the corporation's debts, though they were irregularly signed.

While on the witness stand, Yates was questioned as to how he viewed plaintiff in reference to the latter's connection with the corporation. He stated that he still considered him secretary, but not treasurer; and, in another place in his evidence, he said that, in the event a receiver should not be appointed, he would take steps to have plaintiff removed from office legally and would call a meeting of the board for that purpose, but that he would not recognize him as treasurer; and that, if no other arrangement could be made, he would conduct the business alone. He also stated, in the course of this examination, that he had control over the third director, and exercised it to "railroad" plaintiff out of office, as treasurer.

### Opinion.

[1] The purchase by Yates of articles of merchandise, usually carried in drug stores, and of drugs, that are not readily salable, does not furnish ground for the appointment of a receiver. While the percentage so purchased, in this instance, may be greater than that which might be expected ordinarily, yet his error in this respect was one purely of judgment, and did not amount to gross mismanagement, and does not justify the appointment of a receiver. Nor do we consider, when Yates failed to consult the preferred stockholders relative to purchases made to supply the original stock, after the first general purchase, that such failure afforded ground for a receivership. In our view, that ground and the one immediately preceding it, whether considered alone or together, are without merit.

[2] Considering next the real purpose that Yates had in holding the meeting of the directors, we reach the conclusion that the purpose was to force plaintiff out of the sec-

retary-treasurer's office, and probably to force him to sever his connection with the corporation, altogether. We are led to so conclude from the manner in which he proceeded. He even refused to advise plaintiff of the purpose of the meeting, and it is doubtful if he gave him notice of the meeting at which the resolutions were actually passed, though plaintiff was a member of the board. We are also led to conclude that such was his purpose, because, while on the witness stand, Yates stated positively that, while he recognized plaintiff as secretary, he no longer recognized him as treasurer, and that he had "railroaded" him out of the treasurer's office. He further said that, if a receiver should not be appointed, he would call a meeting of the board of directors and remove plaintiff as secretary-treasurer. We infer that he has assumed the duties of treasurer, for he said at the trial that he had been conducting the business alone.

This purpose Yates has accomplished, in part, and intends to accomplish more completely with the aid of the third director, whose vote, confessedly, he controls. In other words, the resolutions were passed by Yates and a director so controlled, to whom Yates had transferred one share of stock, and Yates with that director's aid, unless a receiver should be appointed, will be in full control of the corporation; and, in so far, as appears, probably will remain so, for a new board cannot be elected, as plaintiff has 50 of the voting shares, Yates 49, and the third director 1. The situation will be intolerable, and one not contemplated by law or the charter.

In saying what we have, we do not mean to impute any dishonest motive to Yates, nor are we unmindful of the fact that plaintiff issued two checks of the corporation without the president's signature. This, however, was evidently done in settlement of debts of the corporation; and Yates had every opportunity to ascertain that fact before acting.

While plaintiff's action was irregular in that respect, still it did not justify the action taken by Yates, nor was that action justified by the fact that plaintiff was not at the company's place of business during the greater part of the day, when it was understood, at the organization of the corporation, that, in the beginning, he would be expected to remain there only a part of his time, and when it is apparent from the surrounding circumstances that the time he was expected to remain in the beginning did not nearly equal the time called for by the resolution. The company then had been in business only about two months.

We do not question the power of a board of directors to define reasonably the duties of officers that it has power to elect, when they are not defined by the charter or by law; nor even, when necessary, to remove an officer that it has power to elect, but when one member of a board, with the aid of a mere dummy, does what Yates has done, another question presents itself. Under such circumstances, the action of the so-called board will be closely scrutinized; and when so scrutinized, if it appear that the action taken has resulted in that member's taking charge of the treasurer's office and discharging its duties, and that, unless relief be granted, that member will be, and will probably remain, in full control of the corporation, and that such was the purpose of that action, it will be regarded as an abuse of power, and gross mismanagement, and a receiver will be appointed. Section 1 of Act 159 of 1898.

[3, 4] In respect to the interveners herein, they are not in such position that their intervention can be considered. They have taken a neutral position, and have expressly declined to pray for the appointment of a receiver, but have left the matter to the court. It is true that they receded from this neutral position at the close of the evidence in chief, but as their amendment was verbal,

instead of written, and as it was objected to, when offered, it will be disregarded. However, in respect to the original intervention, as the defendant permitted the interveners to participate in the trial under the neutral position they had assumed, without excepting or objecting to their doing so, and as they so participated, by questioning witnesses, while occupying that position, we will not take it upon ourselves to dismiss the intervention, but will permit it to remain where it is, especially as it does not change the result.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed, at appellant's costs.

Rehearing refused by Division B, composed of Justices O'NIELL, LAND, and BAKER.