JULIAN E. BAILES, Judge Pro Tem.
This is an appeal by plaintiff-appellant from the judgment of the trial court rejecting his demand that the court appoint a receiver for the defendant-appellee, Crescent Riding Academy, Inc., (CRA) a nonprofit corporation. In addition to appellant’s seeking the appointment of a receiver he sought and obtained judgment in the court a quo permanently enjoining CRA, its officers/directors and members, individually and collectively from taking any action to expel or discipline him as a result of any past activities which formed any part of the record of these proceedings.
Appellee, CRA, did not appeal from the judgment awarding the injunction, thus this portion of the judgment of the trial court is res judicata and is not a part of this appeal.
*861 Our consideration and appreciation of the issues before us in this appeal compels the conclusion that the judgment appealed is correct, and accordingly, it is affirmed at appellant’s cost.
The plaintiff proceeding under LSA-R. S.12:258 by summary process authorized by LSA-R.S. 12:254 and 259, as grounds for seeking the appointment of a receiver, alleged that:
1. The officers and directors of the corporation are wasting, misusing and misapplying the assets of the corpo- ■ ration.
2. The majority of the members are violating the rights of minority members.
3. In 1966 a systematic program was begun to “squeezing out” members of the corporation while taking in no new members.
4. Plaintiff had been refused access to corporate records and that the Directors sought to have him expelled from the corporation.
5. The corporation records were not kept properly.
6. Because of a lease entered into by the corporation on January 27, 1971 with City Park Improvement Association wherein members would not be given a discount on stall fees, the membership was thus “locked-in” because there was nothing left to attract new members.
7. Plaintiff intends to file a membership derivative suit against corporation officers to recover wasted assets.
8. The president is and has been receiving compensation from Crescent in violation of its charter and bylaws, and
9. One or more of the other officers have been receiving major concessions from Crescent not available to the minority. Other advantages are available to the majority, but not to the minority.
The issues between the parties was joined by the defendant’s answer which is essentially a general denial of all the allegations of plaintiff’s petition.
This matter was transferred by the trial court to the Commissioner of the Civil District Court for the Parish of Orleans. The Commissioner, after five days of trial filed in the record his findings of fact and his recommended judgment. To the Commissioner’s report, the plaintiff filed exceptions thereto, and after consideration of the exceptions to the report of the Commissioner, the trial court overruled the exceptions and rendered judgment dismissing the rule for the appointment of a receiver but did grant the permanent injunction as stated supra.
After perusing the entire voluminous record herein, we find that Commissioner John A. Salvaggio has adequately and accurately set forth the facts in his report, which we, in part, adopt and quote as follows :
“(1) Crescent Riding Academy, Inc. is a nonprofit Louisiana Corporation existing under a charter duly adopted and under a lease obtained from Louisiana City Park Improvement Association; under its charter and lease, Crescent has a dual purposed, quasi-public existence. On one hand it is concerned with providing stall space and general riding facilities for its own members and, on the other hand, it also provides stall and feeding facilities to the general public on a monthly basis as well as public rental of ‘trail horses’ on an hourly fee basis. The plaintiff in the present lawsuit is a member of the corporation and this lawsuit does not involve complaints by either the Lessor or a public user of the facilities.
“(2) This lawsuit is centered about the activities of the plaintiff, his family, Mr. Russell Ruiz, President of the corporation *862 and Mrs. Charles Prechter, Secretary-Treasurer of the corporation.
“(3) The events leading up to plaintiffs request for a court appointed receiver were as follows:
“Early in 1971 Mr. Ruiz reprimanded the daughter of Mr. Brupbacher for jumping her horse in an area where jumping is not permitted and for using a fixed jumping pole, either of which practices could result in serious injuries to the rider and the animal. This reprimand brought about a confrontation between Mrs. Brupbacher, wife of Plaintiff and Mr. Ruiz in which Mrs. Brup-bacher complained that the reason her daughter was forced to use this type of jumping procedure was that the ring in which jumping was permitted was unsafe for use because of lack of proper land fill; she further asked to be informed as to why the regular jumping ring did not contain the proper land fill and Mr. Ruiz’s reply was that there were not enough corporate funds available to obtain the fill. Thereafter, Mrs. Brup-bacher demanded to see the corporate books. (Tr. Vol. 1 pgs 31-33).
“(4) The first charge leveled by petitioner is that under the leadership of Mr. Russell Ruiz, Crescent began in 1966 ‘a systematic program of squeezing out members of the corporation while taking in no new members,’ thereby limiting available fees. The Commissioner finds that other than the obvious intent of the Board of Directors to oust Mr. Brupbacher, there is simply no evidence to be found in the record indicating that anyone has been squeezed out of the corporation. No ex-member was brought before the court to testify that he or anyone else had ever been ‘squeezed out’ of Crescent Riding Academy, Inc. As to plaintiff’s charges that there is a systematic program of not taking in new members, again, it is the finding of the Commissioner that no evidence was introduced to establish that anyone who sought a membership was refused. However, this particular charge goes deeper in that plaintiff asserts that no new member is forthcoming because of the provisions of the current lease between the City Park Association and Crescent Riding Academy. This lease which forms a part of the record, provides in part that the former practice of giving a discount in stall rental fees to actual members of the corporation as opposed to mere stall renters, would cease and there would be no discrimination made between members and renters. (Tr. Vol. 1, p. 135). Additionally, there is a membership entrance fee in the amount of $500.00 which is refundable at the termination of membership. It is the finding of the Commissioner that this non-discriminatory clause contained in the lease was imposed by the City Park Association and not something contrived by Crescent to discourage new members. Nor does the Commissioner find that the requirement of a $500.00 refundable entrance fee to be indicative of any attempt by the corporation to close or limit its membership.
“(5) The next charge made by plaintiff involves the question of whether or not defendant improperly withheld the production of corporate records when the production was demanded by plaintiff and whether or not sufficient books and records had been maintained by the responsible corporate officers. It is the Commissioner’s finding that at the time this demand was made in January of 1971, the Corporation did not have a set of books and records in the true since [sic] of the terminology. The records were rather loosely kept and there were no ‘books’ to accurately reflect the cash flow of the corporate business. This is obvious from the testimony of Mr. James Casabat, the Certified Public Accountant hired by plaintiff to inspect the corporate books and records and also from the testimony of Mr. Chris Gerber the Certified Public Accountant hired by Crescent Riding Academy in July of 1971 to set up the necessary books to reflect Crescent’s operations. Mr. Casabat testified that it was impossible for him to draw any con- *863 elusions because of the insufficiency of books and records. The Commissioner further finds that the corporate officers did delay in giving plaintiff access to whatever books and records were available. However, the conclusions to be drawn from the delay to furnish these records and from the insufficiency of the records themselves is set out below in the Commissioner’s Opinion.
“(6) The next charge leveled by plaintiff alleges that the president of the corporation has been receiving compensation for his services in violation of the corporate charter and by-laws and that some of the officers have been receiving major concessions not available to all of the members. In connection with these charges, plaintiff has attempted to show at the trial of this matter that Mr. Ruiz, the President of the corporation had utilized his position to engage in the purchase and sale of horses for personal gain. The Commissioner finds that both Mr. Ruiz and Mrs. Prechter spent many hours each day in the operation of the barn and handling the business affairs of the Riding Academy; that there were no major concessions being derived by any member of the Academy that was not available to all members of the Academy; that the minutes of a meeting of Crescent held on February 23, 1967 reflect that the general membership agreed to permit privately owned horses to be used as trail guide horses and that such privately owned horses be given free rent and board. (Tr. Vol. 2, p. 204); that pursuant to Crescent’s Articles of Incorporation, Mr. Ruiz was afforded some meager compensation for the services he rendered in the form of stall and feed concessions for his horses; that all of the horses owned by Mr. Ruiz stalled at Crescent’s stables were always available for use as trail guide horses or as for other riding purposes for any member and the children of the members ; that Mr. Ruiz has served as the elected President since 1966 and Mrs. Prechter has served as the Secretary since 1968 and as Treasurer since 1970; that Mr. Ruiz in fact did engage in the practice of buying and selling horses, but it is the Commissioner’s finding that this practice was limited solely for the benefit of members of the Academy and for prospective tenants and, indeed, plaintiff himself purchased his horse through Mr. Ruiz. (Tr. Vol. 1 pgs. 91 & 92). That there is no evidence to force a conclusion that the small profit made by Mr. Ruiz in some of the transactions was of such value as to classify it as a ‘gain’ commensurate with the hours put in by Mr. Ruiz.
“(7) It is the finding of the Commissioner that plaintiff has failed to show any method by which the corporation could realize a greater profit than it is presently realizing. (Tr. Vol. 1 pgs. 137 to 138).
“(8) A most serious charge has been made against Mrs. Prechter concerning her practice of keeping books by means of bank deposit slips. Mrs. Prechter made it a practice to make a second copy of her bank deposit slip and plaintiff has amply demonstrated that in several instances, Mrs. Prechter gave herself credit for stall fees on the retained copy whereas such credits did not appear on the copies that accompanied the actual bank deposits. The Commissioner’s finding is just as Mrs. Prechter testified, she could not explain the discrepancies and she may owe money to the corporation based on the discrepancies. However, it is also the Commissioner’s finding, that these discrepancies whether intentional or merely the result of sloppy bookkeeping, are of little consequence to the question of appointing a receiver as will be more fully explained in the Commissioner’s Opinion below. In this connection, it is also the finding of the Commissioner that as stated above, Mrs. Prechter had devoted a great number of hours each day to the affairs of this corporation, that whereas her bookkeeping procedures were lacking in themselves, they were still much better than the bookkeeping practices of the corporation as they had existed before her taking on the job (Tr. p. 174 — 175 Vol. 3), and that she along with other members of the corpora *864 tion had periodically personally endorsed corporate obligations and had much to do with the obtaining of sufficient funds to pay off a lawsuit which had been brought against the corporation.
“(9) Plaintiff further attempted to show at the trial of this matter that members of the Board of Directors of Crescent had deliberately acquired 5 new members in order to stack the board against him; that these new members had no intention of ever stalling a horse at Crescent and, additionally, they were non-residents of the State of Louisiana. This special meeting took place on March 11, 1971. It is the finding of the Commissioner that pursuant to charter requirements, certain members of Crescent had filed suit in the Civil District Court, which suit bears Docket No. 520-835, seeking return of their deposits totaling $2,000.00. This citation and petition was served on Mr. Ruiz on March 4, 1971, one week prior to the said meeting, and the monies raised from these new memberships were used to pay off these claims. (Tr. Vol. 4 pg. 356).
“(10) It is the finding of the Commissioner that on March 9, 1971, plaintiff took it on himself to visit Mr. Ellis Laborde, General Manager of City Park Association, the landlord of Crescent Riding Academy and that at this meeting, in direct contravention to his previous manifestation that the lease was not good for Crescent because of the non-discriminatory clause previously discussed, did assert to Mr. La-borde that City Park could have done better by leasing the facilities to other people, including Mr. Brupbacher. In that connection, it is the finding of the Commissioner that this particular action of Mr. Brup-bacher was not to the best interest of Crescent, especially in view of the history of the struggle that the present membership has undergone in order to buy out a subtenant of Crescent who had gained disfavor with City Park. (Tr. Vol 1 pg. 50; Vol. 2, pg. 343; Vol. 4 pgs. 227 to 230).
“(11) It is the finding of the Commissioner that at the time of the trial of this matter, a proper set of books have been set up by the corporation and are being maintained under the supervision of Mr. Chris Gerber, a Certified Public Accountant.
“(12) It is the finding of the Commissioner that at the time of the trial of this matter, many improvements had taken place including the providing of more fill for certain of the rings at the Academy and that the jumping facilities have been described as adequate. (Tr. Vol. 4 Pg. 284 to 287).
“(13) It is the further finding of the Commissioner that the current lease under which Crescent operates contained a clause that the lease is cancellable at City Park’s option should Crescent be placed in receivership.
a * * * y>
LSA-R.S. 12.258 provides :
“§ 258. Appointment of receiver
“A. The court may, after trial, appoint a receiver to take charge of the corporation’s property when it is made to appear, in a proceeding instituted against the corporation:
“(1) By any member or creditor that the directors or officers of the corporation are jeopardizing the rights of its members or creditors by grossly mismanaging the corporation, or by committing gross and persistent ultra vires acts, or by wasting, misusing or misapplying the assets of the corporation;
(( * * * »
“(5) By any member, that a majority of the members are violating the rights of minority members and endangering their interests;
(( * * * »
(Emphasis added)
The question before this court is strictly one of fact. The allegations which encompass mismanagement, wasting, misus *865 ing or misapplying the assets of the corporation and the violation of the rights of the minority members by a majority of the members are totally questions of fact.
It is true that prior to the secretary-treasurer enlisting the aid of a certified public accountant there was much to be desired in the manner of bookkeeping. It is also true that the accounting for the cash flow left unanswered questions but even so there was no evidence of wrongdoing or misappropriation of funds. As noted by the Commissioner, a simplified bookkeeping system has been inaugurated and is now maintained.
Plaintiff’s argument that the board of directors attempted to expel him as a member of CRA does not address the facts. There was no attempt at expulsion of plaintiff until the board of directors learned that he had contacted Mr. Laborde, of the City Park Board with the suggestion that the City Park Board could have obtained a better lease from him. The board of directors felt that plaintiff was acting in a manner hostile to CRA’s better interests and that the plaintiff’s action justified his expulsion.
The new members in CRA were secured, not for the purpose of “stacking the membership” against plaintiff. At the time the five new members were recruited, CRA was defendant in an action by former members to recapture their $500 membership fees. The funds derived by the admission of the new members were used to pay off these former members in order to secure the dismissal of their action and put an end to that litigation. There is no proof in this record that the purpose of the induction of the new members was to stack the membership in order to expel plaintiff.
The trial court found that the plaintiff was in good faith and was acting in the best interest of CRA and that his conduct did not constitute a legally sufficient ground for expulsion from membership. On this finding, the trial court enjoined the officers, directors and members from expelling the plaintiff as stated supra, CRA has not appealed this injunction and the correctness of this portion of the judgment is not before us.
It is our finding that the action of the board in considering the expulsion of plaintiff was not violative of his rights, and that the CRA representatives were in good faith in this action.
It should be noted that Mr. Russell Ruiz was both president and general manager of CRA. He devoted many hours attending to the affairs of CRA without any remuneration as such for those services. It is reasonable to assume that any remuneration he received in the form of free stall rent or free feed, was in his capacity of general manager. It is equally true that he may have netted a profit from the sale of a small number of horses. However, he was not in competition with any activity of CRA in these sporadic horse sales. This was a service he rendered to the membership of the academy. In fact, he assisted the plaintiff in locating his own horse. As far as Mr. Ruiz receiving free stall space and feed for his horse, it was the policy of CRA to furnish such to the owner of any horse used in the trail riding activities.
Appellant relies on the case of Wolbrette v. New Orleans Drug Co. (1922) 151 La. 649, 92 So. 214, as supportive of his argument that the attempted expulsion of him as a member can furnish grounds for the appointment of a receiver. This cited case is clearly inapposite on the facts and is no authority for the appointment of a receiver herein.
Further, appellant cites and relies on Davies v. Monroe Waterworks & Light Co. (1901) 107 La. 145, 31 So. 694, as supportive of this assertion that a receiver should be appointed on showing that the official of the corporation has no right to extend favors to certain shareholders at the expense of the corporation. We find the facts of the cited case are so unlike the instant case that it cannot be considered. *866 Furthermore, we find no gratuities were extended to any of the shareholders.
As the court stated in Peiser v. Grand Isle, Inc. (1952) 221 La. 585, 60 So.2d 1:
“[1-3] * * * In determining whether or not the facts justify and make advisable a receivership, in the absence of a clear showing of fraud or breach of trust the courts are slow to interfere, will order the appointment of a receiver only when it is manifest that it should be made, and are influenced by a consideration of whether such action would serve a useful purpose. * *
For the foregoing reasons, we find no factual basis for the appointment of a receiver herein. Accordingly, the judgment appealed is affirmed at appellant’s cost.
Affirmed.