LAND, J.
 

 This is an application by Mrs. Ruby L. Best, administratrix of the. succession ,of W. C. Best, for the appointment of a receiver for the Southern Hidé Company, a Louisiana corporation, with its domicilé in the city of Shreveport. '
 

 From a judgment rejecting her demands and refusing the application, the administratrix has appealed.
 

 At his death on November. 25, 1928, W- C. Best was a minority, stockholder in defend; ant company, and owned 119 shares, Mrs. I, L. Helpman, 211 shares, and W. J. McGuire, 170 shares, out of a total of 500 shares of the par valué of $100 each.
 

 The stock of decedent was acquired. during his marriage to applicant, Mrs. Ruby L. Best, who was duly appointed and has qualified as administratrix of his succession, and who has also been duly confirmed as natural tutrix of the minor, W. C. Best, Jr.
 

 The corporation was organized on January 7, 1927, with Wallace J. McGuire, president, W. C. Best, vice president, and Mrs. I. L., Helpman, secretary-treasurer, as the officers and the first board of directors, and so con-, tinued until the death of W. C. Best November 25, 1928. Since that daté the corporation has been operated under the management of J. B. Best, brother of the decedent, together with Wallace J: McGuire and Mrs. L L. Help-man, the remaining directors of the corporation.
 

 The application for appointment of receiver was made September 19,1929, on the grounds
 
 *1000
 
 that the directors and officers of the corporation are jeopardizing the rights of the stockholders and creditors of same by grossly mismanaging the business, by committing acts ultra vires, and by misusing the property and funds of the corporation; and that a majority of the stockholders is violating the charter rights of the minority and putting their rights in imminent danger.
 

 Applicant alleges that the corporation, from November 1, 1928, to August 10, 1929, has lost the sum of $9,260.90 through mismanagement on the part of the board of directors.
 

 Plaintiff alleges that, after the death of her husband November 25, 1928, the business was under the management of McGuire, that he was a mere bookkeeper, and without experience as a hide, wool, and fur man.
 

 In other words, plaintiff attributed the losses complained of to McGuire’s alleged unfamiliarity and inexperience in the business managed by him.
 

 In our opinion, the facts of the case do not support this contention. Those losses were not the result of mismanagement, either on the part of the former officers of the corporation or' on the part of Wallace J. McGuire and Mrs. I. L. Helpman, the directors named in plaintiff’s petition, but were caused by a ■declining market.
 

 In the early part of 1927 there was a slowly rising market on hides, and the market continued to advance until around December, 1927. Necessarily, there was a profit for that year. The advance continued through 1928 until about July, 1928, when there was a break from about 22 cents to around 15 or 16 cents. There was a little advance after November, 1928, up until the 1st of January, 1929, and then, a decided break occurred in 1929 to 6 or 7 cents per pound for hides, and continued practically throughout that year.
 

 [t] It is apparent that business experience cannot control market prices, and that a decline in prices entailing losses is not mismanagement of the affairs of the corporation by the directors.
 

 The other grounds alleged by plaintiff for the appointment of a receiver are:
 

 (1) That the corporation has been paying excessive prices for hides.
 

 This allegation is without proof to sustain it.
 

 (2) That its pay roll is greatly excessive, and, particularly, that there was no necessity for the employment of Herbert Loeb at a salary of $200 per month, or for the employment of B. E. Wilson at a salary of $200 per month.
 

 The pay roll of the corporation during the year 192S, until the death of W. O. Best, was as follows:
 

 W. C. Best..........................$250.00
 

 W. J. McGuire......................$250.00
 

 J. B. Best..........................$150.00
 

 Total ..........................$650.00
 

 Since the death of W. O. Best, the corporation has paid the following salaries:
 

 W. J. McGuire......................$250.00
 

 Herbert Loeb.......................$200.00
 

 J. B. Best...........................$150.00
 

 W. J. Van Lear.....................$100.00
 

 Total ..........................$700.00
 

 The actual increase in salaries has been $50, or between 7 and 8 per cent.
 

 Herbert Loeb has been engaged in the wool, hide, and fur business for a number of years, and is,' admittedly, an expert in that line of business. Plaintiff first complains of losses
 
 *1002
 
 because of the inexperience of McGuire, and again complains when 'McGuire employs a competent man at $200 per month, apparently a reasonable salary for the services rendered.
 

 B. E. Wilson was a buyer for defendant corporation, and was located at Alexandria, La. At the date of the death of Best, which occurred in the midst of the fur season, Wilson was called, in by McGuire for one month at a salary of $200. His presence in Shreveport as an experienced buyer was clearly necessary, and was a matter of emergency, as W. C. Best, the vice president of defendant corporation, an expert in buying and selling hides, etc., had died. We find no mismanagement as to the increase in salaries. The employment of Loeb and Wilson was clearly necessary. ■
 

 (3) That its telephone and telegraph and traveling expenses are excessive, considering its volume of business, and that the services of W. J. McGuire are not worth over $100 per month, while he was drawing $250 per month.
 

 There is no proof that the above expenses were excessive. McGuire received $250 per month when W. G. Best, vice president, was manager. After the death of Best, plaintiff alleges that the affairs of the corporation have been managed by McGuire. His salary is only $250, the same that it has always been, although his work now includes being manager of defendant company.
 

 The charge that McGuire’s services are worth only $100 per month is the' mere ipse dixit of plaintiff. McGuire, before his connection with defendant corporation, had received from Wray-Dickinson Company and the Dickinson Motor Company of Shreveport, La., an average from $6,000 to $10,000 a year. His position with the Dickinson Motor Company was that of sales manager. Later, he was made secretary-treasurer and then vice president of that company.
 

 The defendant company is a family affair, and very far from being a harmonious one, as shown by the attitude of plaintiff in the present case. Fiaintiff is the sister of Mrs. I. L. Helpman, named in the petition as one of the directors of the corporation, of whose acts the plaintiff is complaining. McGuire, the other director, is the husband of plaintiff’s niece, and J. B. Best, acting as director, is the brother of plaintiff’s deceased husband, W. C. Best.
 

 Plaintiff operates in the city of Shreveport a competing wool, fur, and hide business within one block from the plant of defendant corporation, and is much aggrieved that she-has not been placed on its board of directors-by McGuire and Mrs. Helpman, the majority-stockholders.
 

 It was only at the earnest solicitation- of W. C. Best, the deceased husband of plaintiff, that McGuire agreed to serve the corporation at a salary of $250 per month, with the hope of building up a business in which he might have an individual interest, instead of continuing to work for others as a mere employees
 

 (4)That the corporation, through McGuire and Mrs. Helpman, has permitted the employees to overdraw their salaries in large amounts, and particularly J. B. Best and B. E. Wilson.
 

 When McGuire came into the business, the account of J. B. Best, as well as the account of W. C. Best, was overdrawn. The overdraft of J. B. Best increased only about $80 or $90 under the McGuire administration, from the date of the death of W. C. Best until the date of trial of this ease. The account of J. B. Best was $200 or $300 at the date of the organization of defendant company, and came to it as an obligation, when it took.
 
 *1004
 
 ovefthe wool, fur,- and hide business formerly owned and operated by W. G. Best.
 

 ■: Now as to the overdraft of salary by B. E. Wilson. When -Wilson first became connected with defendant company, it was necessary that he buy an automobile to travel his territory as a buyer for the company.
 

 W.: 0. Best, deceased, advanced him $150 to cover the cash payment on the car. Wilson did not. pay the note given for this amount. Pie was allowed to draw $50 more. He gave his note for $200, which, the record shows, he agreed to liquidate within a month. There i's' nothing to show that the note is not good, or that’defendant company has suffered any injury by the transaction. Besides, these were advances made to' Wilson to enable him to act as a purchaser forthe corporation, and not overdrawn salary..
 

 (5) That the corporation is engaged in the sale of motorboats, which is an act ultra vires, and that, when' this fact was called to McGuire’s attention Some six months prior to the institution of the suit, he continued to operate th'e'motorboat business for his individual ¿¿count, thereby devoting the company’s timé to his private affairs, for which the company gets nothing.
 

 ' The boats were originally purchased to trap on Gross Lake near the city Of' Shreveport. This "Was abandoned, as' the lake was too much used. The boats were then employed to-take dealers from Boston and St. Louis out on the-water, as- a kind of advertising feature; Only one boat was bought at a time, at a cost of $154. '
 

 W. C; Best, the deceased husband of plaintiff, consented to this arrangement. After the death of her husband, plaintiff objected to the'purchase1 of the boats1 by defendant company. This practice was thereafter discontinued, and McGuire purchased the boats, one at a time, personally.
 

 There- are only two boats on hand, and a profit will be shown when these boats are paid out.
 

 The ultra vires acts complained of by plaintiff are trifling, were1 discontinued six months before this suit was brought, and no injury has been shown to defendant corporation.
 

 (6) That there has been no stockholders’meeting, and that there has been no director elected to succeed W. Q: Best, deceased.
 

 ■ [4] After the death of W. C. Best; there was a meeting of the stockholders. X B. Best was elected a director at that meeting, which, however, was irregular, as the notice was addressed to the estate of W. C. Best.
 

 If plaintiff is qualified to act as a director in this corporation, or to vote at a stockholders’ meeting, her remedy is not to ask for a receiver, but to demand a new stockholders’
 
 meeting, or
 
 she may bring suit to set aside the election of J. B. Best as a director.
 

 In Fletcher on Corporations, vol. 3, page 2738, it is said: “Fraudulent concealment of a notice of meeting from a stockholder, may be ground for setting aside the proceedings at the meeting, although the notice may have been published as required by the charter or statute. Johnston v. Jones, 23 N. J. Eq. 216 ; Mullverhill v. Vicksburg R., Power & Mfg. Co., 88 Miss. 689, 40 So. 647.
 

 “If a meeting is held or conducted fraudulently or unfairly, even though a majority of the stockholders or members may express their assent, it will be illegal, and a court of equity will set the proceedings aside at the suit of injured stockholders or’ members.” Fletcher on Corporations, vol. 3, p. 2752 ; State v. Smith, 15 Or. 98, 14 P. 814, 15 P. 137,
 
 *1006
 
 386 ; Com. v. Patterson, 158 Pa. 476, 27 A. 998.
 

 Section 30, paragraph 2, of Act No. 250 of 1928, gives to any stockholder owning more than one-fifth of the outstanding stock of the corporation the right to compel a meeting of the stockholders at any time. Plaintiff controls 24 per cent, of the stock of the defendant corporation.
 

 The mere fact that the holders of a majority of the stock of defendant corporation may not elect plaintiff a director, at any stockholders’ meeting she may have called, is no ground for the appointment of a receiver.
 

 Judgment affirmed.