143 So. 334

RACOBY v. PEOPLE'S FURNITURE CO., Inc.

No. 31888.

July 20, 1932.

H. L. Hammett, of New Orleans, for appellant.

Deutsch & Kerrigan, of New Orleans, for appellee.

OVERTON, J.

This is an appeal from a judgment, rejecting plaintiff's demand for the appointment of a receiver. Plaintiff's cause of action rests upon allegations showing that she is the owner of 20 shares of stock in the People's Furniture Company, Inc., the defendant herein; that the remaining shares of stock outstanding, with the exception of 3 qualifying shares, are owned by Morris Kirschman; that a meeting of stockholders has not been held since June 24, 1930, and none since then for the election of a board of directors; that no meeting of the board of directors has been held since that date, with the exception of one held on December 15, 1930; that Kirschman controls the corporation and is grossly mismanaging its affairs, and thereby jeopardizing plaintiff's right as a minority stockholder; that the corporation is operating at a loss; that the expenses of the corporation have increased largely for the first six months of 1931 over those for the first half of 1930; that the pay roll of the corporation is excessive; that Kirschman charges the corporation a commission of 10 per cent. on all purchases made by it and a commission of 5 per cent. on all sales that it makes; that an issue of $33,500 of stock by the corporation to Kirschman was without consideration, was ultra vires and illegal, and should therefore be canceled; that, on September 5, 1929, Kirschman's salary was fixed at $400 a month; that this salary was grossly excessive, and subsequently canceled; that its cancellation indicates that the salary was originally given to Kirschman in an attempt to injure plaintiff; that the corporation buys all of its merchandise from Kirschman, which results in its being deprived of an opportunity to purchase in the open market; and, as a consequence of Kirschman's acts, the indebtedness of the corporation to Kirschman continues to increase and the net worth of the business continues to decrease.

There is no dispute that Kirschman is by far the largest stockholder of defendant. He is also the sole stockholder of another retail furniture corporation in New Orleans, and is a member of a large furniture purchasing

syndicate, in which the record would suggest that defendant, due to its financial condition, could not have reasonably hoped to have been received as a member. Somewhere about May, 1929, Kirschman, thought he saw an opportunity to make a successful investment by buying stock in the defendant company and building up its business.

Kirschman, at that time, bought 145 shares of stock·in the corporation, which, as against 165 shares of outstanding stock of the company, gave him control of the corporation. He admittedly paid for these shares more than they were actually worth, but this was several months prior to the present great financial depression. At the time of this purchase, defendant was not in a good financial condition. It was backward in the payment of its debts, and some of the merchants with whom it was transacting business had refused to extend it further credit.

Kirschman advanced the money to pay the outstanding indebtedness, and also sold defendant merchandise which it was unable to pay for, only in part. On September 5, 1929, in partial payment of the indebtedness thus arising, and to increase the capitalization of the company, defendant's board of directors authorized the issuance to Kirschman of $33,-500 of its capital stock. Defendant was credited by Kirschman with the full par value of this stock.

Kirschman's membership in the purchasing agency gave him facilities for buying not enjoyed by the average retail furniture dealer. Due to the large purchasing power of the agency, of which Kirschman, as a member, enjoyed the benefits, he was able to purchase merchandise ordinarily from 10 per cent. to 15 per cent. less than the ordinary retail dealer. In making purchases through the agency, naturally he had to deal on his own personal responsibility, for it was to him that the benefits to be derived from the agency inured. The goods, therefore, when bought, belonged to him, and were delivered to and paid for by him. He sold them, or, at least, a part of them, to defendant, at the prices at which he bought, plus freight. When the goods reached him, they had to be put in a warehouse. The goods that were injured in transit had to be repaired. Insurance and other expenses on them had to be paid. These expenses, and others, when incurred, were not included in the sale price to defendant, but fell upon Kirschman. If any of the goods sold failed to sell within a reasonable time, Kirschman took them back and gave defendant credit for the goods at the prices at which he sold them, unless they were repossessed or injured goods, in which event they were taken back at their appraised value.

For selling defendant merchandise on these terms and conditions, Kirschman exacted a commission of 10 per cent. on all net purchases made by defendant from him, and a commission of 5 per cent. on all net sales of the merchandise made by it. About July 1, 1931, this arrangement was altered so that since then Kirschman has received no commission on purchases made by him, but has been credited with sums equivalent to approximately 7.85 per cent. of the amount of sales of the merchandise sold by defendant. It is evident that, under both arrangements, defendant has been enabled to purchase cheaper than its buying capacity enabled it to do in the open market.

It is not correct to say that there has been no meeting of stockholders since June 24, 1930. There was a meeting of stockholders held, of which due notice of the intention to hold the meeting was given the complaining stockholder, Mrs. Lande, by registered mail, on November 11, 1931. As she did not respond to the call, there was only one stockholder present, namely, Kirschman, who owned practically all of the outstanding stock of the corporation. At this meeting a board of directors was elected, and qualifying stock later issued to them. As to directors' meetings, the minute book does not show that a meeting was held since some time in December, 1930. However, it would seem that informal meetings of directors were frequently held of which no minutes were kept.

The operating expense of the corporation, all things considered, does not seem to have been abnormally high. The salary of $400 a month voted to Kirschman on September 5, 1929, does not appear to have been excessive, and certainly not greatly so. Due to the depression, Kirschman, in May, 1930, waived this salary, and since then has drawn none.

We find no mismanagement on the part of Kirschman, who was manager, or of the board of directors elected by him. While the company has lost some money since Kirschman's acquisition of stock in it, yet this loss we think is not traceable to him, but to the depression throughout the country, following his purchase. Our review of the record impresses us with the fact that, had it not been for the interest taken by Kirschman in the corporation, and the efforts made by him to build up its business, defendant likely would not have been in existence to-day as a going concern, in the face of the present financial strain.

In our opinion, there is no proof in the record of gross mismanagement on the part of defendant's manager, Kirschman, nor is there proof of fraud in the conduct of the affairs of the corporation. The record is opposed to any such findings. The irregularities shown of holding informal, instead of formal, meetings of the board of directors, and the failure to keep minutes of board meetings, are certainly not such as to justify the appointment of a receiver.

The prayer of defendant for damages for a frivolous appeal should not be allowed. Assuming that the appeal is frivolous, without so deciding, nevertheless this is not an appeal from a moneyed judgment. It is only where a frivolous appeal is taken from a moneyed judgment that damages therefor are allowable. Succession of Lavergne, 129 La. 119, 55 So. 734; Arrowsmith v. Rappelge, 19 La. Ann. 327; Code Prac. art. 907.

The judgment is affirmed.