349 So.2d 1014 (1977)
Philip G. FINCHER et al., Plaintiff-Appellant,
v.
CLAIBORNE BUTANE COMPANY, INC., Defendant-Appellee.
No. 13311.
Court of Appeal of Louisiana, Second Circuit.
August 29, 1977.
Rehearing Denied September 26, 1977.
*1016 Shaw & Shaw by W. M. Shaw, Homer, for plaintiff-appellant.
Blanchard, Walker, O'Quinn & Roberts by Clyde W. Thurmon, Shreveport, for defendant-appellee.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied September 26, 1977.
MARVIN, Judge.
As minority stockholders in defendant corporation, plaintiffs appeal a judgment rejecting their demand that the corporation be placed in receivership because of alleged gross mismanagement by the majority stockholders as officers and directors of the corporation. We affirm.
After suit was filed on August 26, 1974, the original plaintiff's wife died and her heirs to the community-owned stock were joined as parties plaintiff. We shall refer to plaintiffs in the singular case. Plaintiff's demand is founded upon R.S. 12:151, which states in part:
"A. The court may . . . appoint a receiver . . . when it is made to appear . . .
"(1) . . . that the directors or officers are jeopardizing the rights of its shareholders . . . by grossly mismanaging the business, or by committing gross and persistent ultra vires acts, or by wasting, misusing or misapplying the assets of the corporation."
The lower court also rejected the corporation's reconventional demand for attorney's fees against plaintiff under R.S. 12:151(D), finding that the statutory requisite of bad faith had not been shown. We also affirm in this respect.
Original plaintiff is a brother-in-law to the president, principal stockholder of the corporation. The business of the corporation began as a partnership in 1945 and was incorporated in 1948. In 1950, the original plaintiff became an employee, stockholder, director, and officer (vice-president) of the corporation. He remained in this employment until he was terminated. Two weeks after his termination he filed suit against the corporation in 1974. He and his children own 21 percent of the corporate stock. The remaining stock is owned or controlled by the corporate president.
The lower court correctly set forth the applicable legal principles, against which plaintiff's claims of six acts of gross mismanagement must be weighed. These principles, with citations omitted, are as follows:
"While the provisions of [the statute] set forth the causes for which a receivership may be sought by a shareholder, the appointment of a receiver is not mandatory but is subject to sound judicial discretion. In determining whether or not the facts justify and make advisable a receivership, in the absence of a clear showing of fraud or breach of trust the courts are slow to interfere, will order the appointment of a receiver only when it is manifest that it should be made, and are influenced by a consideration of whether such action would serve a useful purpose. This court will not disturb the ruling of the trial judge in his refusal to appoint a receiver except in a case where it clearly appears *1017 that the interests of the minority of stockholders are in imminent danger. . ." Peiser v. Grand Isle, 221 La. 585, 60 So.2d 1 (1952).
". . . receivership of a corporation, as a remedy, looks only to the prevention of future injuries rather than to the redress of past grievances." Kinnebrew v. Louisiana Ice Co., 216 La. 472, 43 So.2d 798 (1949).
"`. . . The effect of appointing a receiver being to take the property of the corporation out of the control of its own officers to whom it has been entrusted by its stockholders, the courts proceed with extreme caution in the exercise if so summary a power, and in construing such statutes they are inclined to give them a strict construction. * * *
`A minority of the stockholders of a corporation is not entitled to a receiver because of dissatisfaction with the policy and management of a majority of the officers and directors in the absence of any showing of fraud or insolvency. And especially will the appointment of a receiver be denied where a corporation is solvent and its business prosperous, and it is not sought to have it wound up, since, in such case, the wrongs complained of may be remedied under the ordinary powers of a court of equity and without the appointment of a receiver. * * *
`The appointing of a receiver to a healthy going corporation, is calculated to affect injuriously its business and affairs; and such should not be done where the complaining party has other adequate remedies. The statute under which the appointment in this case is sought should be strictly construed . . .'" Reynaud v. Uncle Sam Planting & Mfg. Co., 152 La. 811, 94 So. 405 (1922).
The foregoing principles were approved in Coleman v. La Salle Creosoting Company, 129 So.2d 311 (La.App. 3d Cir. 1961).
It should be noted at this juncture that plaintiff, as vice-president, sales manager, and director of the corporation, was active in its management until he suffered a severe and disabling heart attack in 1972. Plaintiff remained an employee after his heart attack, although disabled from fully performing his duties, until his discharge in 1974.
The defendant corporation, for federal income tax purposes, is a small business subchapter S corporation in which the stockholders served as employees and officers. Each stockholder, including plaintiff, at times requested and drew advances on expected dividends from the corporation. These advances, in essence, were loans by the corporation, for which the corporation charged five percent simple interest. At other times, on dividends declared but not immediately paid to the stockholders, the corporation was charged and eventually paid to the stockholders five percent interest. This five percent loan policy existed for about 20 years and was applied to the stockholders as well as to the corporation.
The lower court did not pass on the corporation's contention that plaintiff, because of his participation in ratification or acquiescence of the policies of the corporation, was legally estopped to claim gross mismanagement. The lower court instead, considered the merits of each of plaintiff's claims of gross mismanagement and found against plaintiff. We do not disapprove of the lower court's approach because we find the record supports the lower court's denial of plaintiff's claims of gross mismanagement. We observe, however, that in any event, because of plaintiff's participation in the management of the corporation as an officer, director and employee, and his failure to challenge existing corporate policy, plaintiff is estopped to complain of gross mismanagement.[1]

THE ALLEGED ACTS OF GROSS MISMANAGEMENT
(1) Failure of the corporation to hold regular meetings of its stockholders *1018 and directors and to keep minutes thereof. In 1962, the former partner of the corporate president terminated his employment and stockholder relationship with the corporation. The stock of this former partner was eventually acquired by the corporate president and plaintiff. Before and since 1962, the stockholder-employees, who were also the directors and officers, consulted sometimes daily about corporate policy and affairs. There were few formal meetings at which minutes were kept.
The better practice is to conduct formal meetings and to keep minutes as our corporations law contemplates. The circumstances shown, with the stockholders being few and (at the time complained of) friendly, do not constitute such acts of gross mismanagement which will compel receivership. Racoby v. Peoples Furniture Co., 175 La. 383, 143 So. 334 (1932); Shelton v. Destrehan Mercantile Co., 151 La. 808, 92 So. 344 (1922).
(2) The five percent loan policy. The record shows that every stockholder, including plaintiff, at one time or another had received advance dividends (loans) or had been owed declared dividends. At the time suit was filed, the corporate president, who, because of his majority ownership, was involved as a debtor or creditor of the corporation to a greater degree than plaintiff, was not a debtor, but a creditor of the corporation. Assuming that a loan to a stockholder is an act of mismanagement, we are not satisfied that receivership should follow in these circumstances. The corporation is shown to be solvent. There was no loan to any stockholder in existence at the time, or since, plaintiff filed suit. Receivership is granted in cases where there is imminent danger of the rights of minority stockholders being destroyed by a fraudulent or illegal practice intentionally designed to dissipate the assets of the corporation. West v. Certified Credit Corporation, 162 So.2d 589 (La.App. 2d Cir. 1964). Where the fraudulent or illegal intent is not present and the corporation is otherwise a solvent and going concern, injunction or other similar remedy, and not receivership, is the relief favored by law.
(3) Continuing payment of salaries and other benefits to corporate employees who are disabled or who are not performing their duties. Plaintiff's complaint is particularly directed at the wife of the corporate president. It is shown that the wife was employed by the corporation as an accountant and stenographer from 1950 until June 30, 1974. In 1973, she suffered a temporarily disabling illness and thereafter worked only intermittently at the office and at her home. During this approximate 18-month period, she was paid her usual salary and had the use of a corporate automobile.
The record also shows that this practice was generally followed for varying lengths of time as to other employees (even those who were not stockholders) who became wholly or partially disabled from performing their duties. Plaintiff himself was disabled in varying degree from fully performing his duties during the last two years of his employment and was similarly treated. Additionally, we observe that no employee was enjoying such privileges at the time suit was filed. We cannot and do not hold that such limited charitable and benevolent practices towards faithful and long-time employees constitute acts of mismanagement.
(4) The corporation's dividend and salary policy and the employment of the sons of the corporate president. Plaintiff's complaints in this area are of arbitrariness and unfairness. Until plaintiff's employment was terminated all stockholders were employees of the corporation. Dividends were considered as a part of compensation for work done for the corporation and salaries were purposely kept low. In 1974, the corporation instituted the policy of retaining 20 percent of its profits as capital reserves. Plaintiff complains that this was a ruse to avoid paying dividends to him as a minority shareholder. We cannot agree. The testimony of the CPA's, the corporate president, and the provisions of L.R.S. 12:62(B) indicate such a practice is not uncommon and is sound. Plaintiff's equity in the corporation was proportionately increased by this practice.
*1019 Plaintiff also complains that two sons of the corporate president were employed by the corporation. Both sons were shown to be performing supervisory duties for the corporation as full-time employees when the suit was filed. One son earned $1,250 and the other $1,000 per month. The higher paid son is a graduate engineer. Plaintiff complains that these salaries and an increase in the salary of the corporate president to $1,500 monthly in 1974, arbitrarily and unfairly deprives him of dividends because the salary expense decreases corporate profits. We find the salaries to be commensurate with the work and responsibilities being fulfilled by the respective officer or employee. The hiring of a particular employee and the amount of compensation paid an employee are judged by their comparative reasonableness as against the duties and responsibilities being performed. The salaries in question we do not find excessive or unreasonable. Best v. Southern Hide Co., 170 La. 997, 129 So. 614 (1930).
(5) Acquisition of an airplane. The corporation purchased a used airplane in 1972 for $19,000 and erected a hangar for it at a cost of $18,000. The plane has been used for business purposes about 70 percent of its flying time. The record shows that it is not uncommon to extend as a fringe benefit of employment, to key corporate employees the personal use of a company airplane when it is not being used for business purposes. Plaintiff's other allegations of unreasonable personal use of corporate assets by the corporate president were correctly found unsupported.
(6) Other contentions of alleged breach of fiduciary duty by the corporate president. Clearly, a fiduciary relationship exists under L.R.S. 12:91. Plaintiff generally complains that he has been forced out of the corporation and unjustly deprived of his fair share of the corporate profit to the extent that a receiver should be appointed. The effect of receivership is a liquidation of the affairs of a corporation. Plaintiff's brief shows that we are asked, in effect, to resolve a family dispute arising from the firing by a corporate president, majority stockholder, of his brother-in-law, corporate employee-minority stockholder:
". . . Although he resented and complained of many of these acts of mismanagement. . . [plaintiff] took no action while he was so employed . . . [a son of the corporate president] was employed and placed in training to take the plaintiff's job. On August 16, 1974, plaintiff was . . . notified by [the corporate president] that he wished [plaintiff] to resign . . . by the first of September.
* * * * * *
"After [the corporate president] refused (1) either to buy . . . or sell. . . (2) refused to . . . exchange [stock] or (3) to offer any other reasonable solution. . . [plaintiff] consulted his attorneys. . .
". . . On August 20 . . . a draft of . . . a suit was prepared and forwarded . . . with a letter advising that . . . suit would be instituted unless the differences could be worked out in . . . (48) hours . . . [s]uit was instituted on . . . August 26 [1974]."
Plaintiff asserts that the corporate president-majority stockholder has followed a "deliberate . . . ungrateful and selfish course of action . . . in dealing with his close relatives and . . . business. . . associates . . . [and that] justice [is] called on to restrain the action of an arrogant, unprincipled and ungrateful corporate manager . . ."
Plaintiff, as an employee, was not guaranteed indefinite employment by virtue of his status as a stockholder and director of the corporation. The power and authority of corporate management, of course within legal bounds of state and federal law, was vested in the corporate board of directors and its chief executive officer. This power includes the hiring and firing of corporate employees, the fixing of reasonable and not excessive salaries, the purchase and use of corporate assets, and the determination of *1020 when and what dividends shall be paid. With only 21 percent of the corporate stock, plaintiff is in the position of many other minority shareholders in other corporations where the majority shareholders adopt and follow policies which minority shareholders do not approve. See, for example, Goldblum v. Boyd, 341 So.2d 436, 442 (La.App. 2d Cir. 1977) wherein a "struggle between opposing groups of corporate shareholders to gain a majority vote to control the management of [a] corporation [was] viewed as a raw exercise in business maneuvering."
The minority shareholder is not without his rights, even where the corporation is solvent. See O'Neal, supra, La. Business Corporations Law, L.R.S. 12:1, generally. Plaintiff cites five cases in which receivership was either granted or recognized as legally proper on the petition of a shareholder.[2] These cases and their rationale were considered in West, cited below. There we said receivership was proper where the mismanagement complained of was ". . . wilful and its purpose is to ruin the corporation . . . where the facts disclose a scheme on the part of the. . . majority stockholder to wreck the corporation and dissipate its assets." 162 So.2d 595. The facts here do not support a finding that the majority shareholder-corporate president is following a scheme to wreck or ruin the corporation and dissipate its assets. The lower court did not make such a conclusion and we find no manifest error.

THE CORPORATION'S RECONVENTIONAL DEMAND
The lower court concluded that the corporation was not entitled to attorney's fees because plaintiff's unsuccessful action for receivership "was not made in bad faith." L.R.S. 12:151(D). We cannot say the lower court manifestly erred in this respect.
At appellant's cost, judgment is
AFFIRMED.
NOTES
[1] See O'Neal, Oppression of Minority Shareholders, Chap. 7, Sec. 7.16 at page 528; 19 C.J.S. "Corporations" § 977, pp. 438-439 and Louisiana cases cited therein. Hough v. Speede, 300 So.2d 239 (La.App. 2d Cir. 1974), writ refused La., 303 So.2d 185.
[2] Brock v. Automobile Livery and Sales Co., 130 La. 404, 58 So. 21 (1912); Kerlin v. Bryceland Lumber Company, Ltd., 134 La. 463, 64 So. 289 (1914); In re Receivership of Webre-Steib Company, Ltd., 136 La. 272, 67 So. 1 (1915); Wolbrette v. New Orleans Drug Co., 151 La. 649, 92 So. 214 (1922); West et al. v. Certified Credit Corp., 162 So.2d 589 (La.App. 2d Cir. 1964).