694 So.2d 636 (1997)
Marion Cahn HIRSCH, Plaintiff-Appellee,
v.
CAHN ELECTRIC CO., INC., Abry S. Cahn, Jr., and Abry S. Cahn, III, Defendants-Appellants.
No. 29327-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1997.
*637 Wiener, Weiss & Madison by Neil T. Erwin, Shreveport, for Defendants-Appellants.
Pugh, Pugh & Pugh by Robert G. Pugh, Shreveport, for Plaintiff-Appellee.
Before MARVIN, C.J., and HIGHTOWER and STEWART, JJ.
STEWART, Judge.
In this minority shareholders' derivative action against the corporation and its officer-directors, Abry S. Cahn, Jr. (Abry) and Abry S. Cahn III (Tab), appeal the trial court's judgment in favor of the minority shareholder, that orders Abry and Tab to remit to the corporation $200,000.00 in excess bonuses, and orders the corporation to declare a dividend, and assesses the corporation with plaintiff's expert witness fees and attorney's fees and the directors individually with the corporations' attorney's fees.
Plaintiff answers the appeal, seeking to increase the monetary awards and assessments and urging that the defendant-directors be personally liable for the plaintiff's attorney fees. For the following reasons, we amend in part, and affirm.

FACTS
Cahn Electric Company Inc. is a closely held electrical contracting corporation. Incorporated in 1949, the original shareholders were Mr. and Mrs. Abry S. Cahn, Sr., and Mr. and Mrs. Henry Cahn, respectively, the parents and aunt and uncle, of the plaintiff and Abry. Of the initial 800 shares of authorized common stock in Cahn Electric, 398 shares are now treasury stock.
Currently, Cahn Electric has only two shareholders, Abry S. Cahn Jr. and Marion Cahn Hirsch. Abry owns 203 shares of one hundred-dollar par value stock in Cahn Electric Co., Inc. He got 199 shares from his mother, Janice P. Cahn, in 1986, and four additional shares through various purchases from family members and the corporation. Mrs. Hirsch owns 199 shares of one hundred-dollar par value stock in Cahn Electric Co. Abry owns 50.48% of the outstanding authorized and issued stock of Cahn Electric Co., and is the majority shareholder. Mrs. Hirsch owns 49.502% of the outstanding authorized and issued stock of Cahn Electric Co., and is the minority shareholder.
When Mrs. Hirsch inherited her stock in 1986, the book value was $1,558,205. In 1992, that value had decreased to $1,276,013. The 1986 per share value was $3,876.00, her *638 share value being $771,324. On December 31, 1992, the per share value had dropped to $3,174.00, which totaled $671,626. The per share value decreased $702 per share, and the aggregate value decreased by $99,698. Cahn Electric and the board of directors ceased paying dividends in 1981 before Mrs. Hirsch inherited her shares.
Cahn Electric has employed Abry regularly since 1956. Since 1971, he has served as president of the corporation, while serving on the board of directors. When John Swart, the company's comptroller and member of the board of directors resigned, Abry assumed the role of treasurer. Then, the Board of Directors for Cahn Electric consisted of only Abry and Tab. Mrs. Hirsch was nominated to the board, but refused. She was invited to attend the monthly meetings with the Board of Directors, and attended all annual stockholders' meetings.
Cahn Electric has employed Tab regularly since 1983. Since 1984, he has served as vice-president. From February 1988, Tab has held the titles of vice-president and secretary.
Between 1986 and 1992 Cahn Electric suffered significant operational losses. The trial court determined that the average monthly loss amounted to $12,456.13. Cahn Electric did receive income from non-business investments, which netted an average monthly income of $7,901.10 reducing the average monthly loss to $4,555.03.
After several years of stock ownership and no dividends from her investments, Mrs. Hirsch corresponded, through her legal counsel, with Abry Cahn Jr. in a letter dated July 10, 1991, which stated:
This is to advise that your sister has again visited with me for the purpose of expressing her concerns that you and your son continue to take enormous salaries and bonuses from a business that is jointly owned between yourself and your sister and when, as a matter of fact, for all intents and purposes the business is in a defunct status and the only way that you are able to continue to maintain your present salary and bonus arrangement is by depleting the liquid assets. The time that I met with you, your son, your sister and her husband I suggested to you that it was ludicrous to continue to run a business which was in the financial condition that Cahn Electric is in, while at the same time relying upon the business liquid assets to keep the business from being declared to be in a financial insolvent cash flow position.
Despite the receipt of this letter, Abry and Tab continued to draw salaries and bonuses for the years 1991 and 1992 totaling $311,818.00. Cahn Electric suffered operating losses for those same two years for $458,900. After continuously voicing her displeasure with the compensation and benefits awarded to Abry and Tab, Mrs. Hirsch broached the subject of Cahn Electric purchasing her shares. The corporation, through Abry, as an officer and director, offered $175,000 with 4% interest over a 10-year term. Mrs. Hirsch declined that offer.
The trial of Mrs. Hirsch's derivative action was held on October 17 and 18, 1995. Both sides presented expert testimony that concluded, according to the respective party, that the compensation and "bonus" payments were either excessive or reasonable.
First, George A. Burton, Jr., plaintiff's expert and a certified public accountant, testified. In preparation for the trial, Mr. Burton made a study and comparison based on Cahn Electric's federal income tax returns years 1986-1994, against the national average for electrical contractors. Plaintiff's exhibits 7-ten, respectively, included graphs that outlined the financial state of Cahn Electric in comparison to the national average for electrical contractors. Exhibit number 7 compared Cahn's net income according to their tax returns with the national industry average of electrical contractors. Upon which, Mr. Burton concluded that Cahn's net income was below the national average and the company had sustained losses. Net income was not limited to the operation of the business, but was the consolidated income that included investment income.
Exhibit eight compared Cahn Electric's investment income against the national industry average. Mr. Burton concluded that Cahn Electric derived a substantial amount *639 of income from preexisting investments, not from the operation of the business. Exhibit nine compared investment income to operating income or loss. Only Cahn's information was used in this assessment. Burton concluded that except a small income item operating profit in 1988, and 1994, a year not included in the plaintiff's petition, the actual operating income suggested losses.
Exhibit ten compared the total compensation of Cahn's officers salaries with the national industry average. Total compensation included the officers' salaries and bonuses. The national industry average consisted of electrical contracting firms with the same assets range one to five million. Abry and Tab's salaries exceeded the national average between the years 1986-1992. The final exhibit, number 11, identified net worth. Net worth is the combined factor of capital stock and retained earnings in a corporation, or stockholder equity. The expert concluded that Cahn Electric had sufficient assets to pay dividends. Abry and Tab's bonuses were excessive, and they have been overcompensated for the services done.
Steven R. Bayre, also a certified public accountant, testified for the defendants. He argued that comparing the net income of Cahn Electric was inappropriate for the plaintiff, in Shreveport, Louisiana, with the national industry average. This location suffers from a depressed economy. The appropriate manner to compare Cahn Electric would be to look at more reliable data such as that compiled by the National Electrical Contractors Association (NECA). NECA is a compilation of data based upon tax returns filed under the industry code for electrical contracting.
Bayre reviewed two NECA tables. Table one revealed that 31% of the companies in electrical work with assets in the same range as Cahn Electric did not have net income in the table year 1991. Table two showed that the total number of companies with the similar range of net assets as Cahn totaled 1232, NECA excluded 550 from the table.
Continuing his comparison, the net income average was .7% of the net revenue excluding other income. The net revenue from the construction work, .7% was the average of all companies. Cahn Electric could not compare favorably with the national average where the loss companies are stratified out of the presentation.
Next, he compared the officers' compensation. Officers' compensation represented 3.6% of the net revenues. Therefore, the average compensation for all companies was $196,982. Through simple calculations, Bayre determined the officers' compensation of companies that did not have net income, yielded an average of $156,440.
Bayre testified regarding Cahn Electric's suspension of dividends. When Janice Cahn controlled most of the stock, Cahn Electric, with her approval, suspended dividends. They have not resumed to build up the net assets of the company to maintain its bonding line.
Finally, when questioned on the reasonableness of the officers compensation, Bayre concluded that in 1986 the high range compensation paid to electrical company officers was $219,000, the low was $17,000. Abry received $179,750. The high range was $100,000 and the lower range was $42,000, Tab received $40,669. In 1990, Abry's earned $116,000. The upper range was $125,000 and the lower was $71,000. Tab's salary increased to $43,896, with the high range represented as $63,000 and the low range as $44,000.
Bayre interpreted the net worth of Cahn Electric stating, "The company is not broke, and in my opinion it is not overcapitalized either." Based upon the duties performed by Abry and Tab, and the possibility of them assuming additional duties, he opined that the overall compensation awarded to them was not excessive, and did not approach a level of unreasonableness. The bonuses awarded were not atypical as recognized by other companies. They were a regular part of the reasonable annual compensation paid to employees. Deferral of part of the compensation provides working capital for the company during the year.
When questioned on the reasonableness of the purchase offer made to Mrs. Hirsch, Bayre argued that he was not qualified to *640 decide the fairness of the offer. However, he did state that Mrs. Hirsch could negotiate.
Abry testified that they compensated salaried employees at Cahn with a base monthly salary and an annual year-end lump sum deferred compensation payment called a bonus. Several subjective judgments were used to decide an employees "bonus." Factors were cost of living, time with the company, effectiveness, attitude, and personal relationships. Because of Cahn Electric's management style, bonuses were not tied to the profit or loss of anyone individual. The Cahns established the overall annual compensation for salaried employees, and then established their own overall annual compensation after consideration of NECA reports. When Tab's salary increased, it was in response to the additional duties that he pursued. The corporation encouraged many senior engineers and estimators to retire, significantly reducing costs. Abry considered the offer to purchase Mrs. Hirsch's shares as fair, and one that the company could afford and maintain a solid financial base.
Marion Cahn Hirsch testified that she had little involvement with Cahn Electric before her inheritance of the stock. She attended all stockholders meetings from 1986 to 1992. While offered a seat on the board of directors, she refused, testifying that her membership would be futile, since she could always be outvoted. Although she did not serve as a director, Abry invited her to attend board of directors' meetings once a month. According to the exhibits submitted by the plaintiff, Mrs. Hirsch did not attend any meetings. While the electrical contracting industry was in depression and substantial losses were occurring, Abry and Tab were paid the following bonuses:

Year Abry Jr. Abry III
1986 $114,000 $11,500
1987 60,000 10,000
1988 50,000 10,000
1989 50,000 10,000
1990 50,000 9,948
1991 50,000 10,000
1992 30,000 12,000
_________________________________________________
TOTAL $404,000 $73,448

At the 165 meetings of the board of directors and the seven stockholder meetings there was never any recommendation, consideration, or vote as to the salary or bonus of Abry or Tab. Both drove corporate owned automobiles for their business and personal use. The corporation paid the medical insurance of Abry and his wife. Abry and Tab enjoyed entertainment expenses, and Cahn Electric Co., paid their personal income tax on retirement benefits.
The trial court concluded that Abry S. Cahn, Jr. and Abry S. Cahn, III had violated a fiduciary duty to the shareholders of Cahn Electric. The court found on behalf of Marion Hirsch in the right of Cahn Electric that Abry Jr. and Abry III should remit $200,000 with legal interest from the date of judicial demand, March 24, 1993. In addition, the trial court ordered Cahn Electric to declare dividends in the amount of $200,000, to be distributed to Abry Jr. in the amount of 50.498% equaling $100,996.00, and Marion Hirsch 49.502% equaling $99,004.00. Cahn Electric was cast for the expenses of the law firm of Pugh, Pugh, Pugh for $1,009.54. Cahn Electric was ordered to pay Marion Hirsch in the amount of $6,324.75, her expert witness fees. It was also ordered that there be a judgment against Cahn Electric for attorney fees incurred by Marion Hirsch for her employment of Attorney Robert G. Pugh in the amount of $20,000.00. Finally, the judgment against Abry Jr. and Abry III decreed that the attorney's fees, expert witness fees, and all other costs and expenses incurred by Cahn Electric in the furtherance of the defense of Abry Jr. and Abry III are borne individually by both men. Abry and Tab appeal this judgment.

ASSIGNMENTS OF ERROR
Both parties assert several assignments of error, we will list the assignments of each party:
First, defendants argue that the trial court erred in finding that both men as officers and directors of the corporation failed to act in good faith, therefore breaching their fiduciary duty to the corporation and shareholders. Second, the trial court erred in applied the incorrect legal analysis. Next, the trial court *641 was clearly wrong in concluding that the compensation paid Abry and Tab was excessive, based on the record of evidence and the managerial duties of the Cahns. Finally, the trial court's remedy was clearly wrong and lacked legal foundation.
Marion Cahn Hirsch answers this appeal, and asserts that the trial court erred in requiring Abry and Tab to remit only $200,000 to Cahn Electric. Second, the judgment ordering dividends to be paid to the stockholders is in error. The trial court erred in requiring the corporation to pay the plaintiff's expert witness fees, attorney's fees, and costs of the trial court's proceedings. In addition, should this court determine that the trial court abused its discretion in denying the plaintiff's motion for the amendment to the petition to include the years 1993 and 1994, then the plaintiff is entitled to additional relief. Finally, plaintiff's counsel requests additional attorney fees for services rendered for this appeal.

APPLICABLE LAW
A derivative action is a procedural device that permits a corporate shareholder to overcome the normal rule that corporate rights of action must be filed and managed by a corporate officer or agent who is subject to the control of the corporation's board of directors. Glenn G. Morris, Shareholder Derivative Suits: Louisiana Law, 56 La.L.Rev. 584 (1996). Secondary actions, as called by the Louisiana Code of Civil Procedure, are regulated by La.C.C.P. articles 591-611. A party coming before the district court must allege in his petition five things, as applicable to this case. First, that the plaintiff was a shareholder during the particular offense. Second, the plaintiff must make a demand upon the other shareholders or members to enforce this demand. Third, the corporation must be joined as a defendant, and against the obligor. Continuing, there must be a prayer in favor of the corporation and against the obligor. Fifth, plaintiff or his counsel must submit a verified affidavit. La. C.C.P. art. 596.
Often in a derivative action were the corporation is closely held, the second requirement, demand upon the corporation, will be dismissed if the futility of the corporate actors compliance is obvious. "[C]ourts have unanimously held that in such a case the demand is futile since it is unreasonable to think that a man will vote to bring suit against himself." See, Smith v. Wembley Industries, Inc., 490 So.2d 1107 (La.App. 4 Cir.1986) citing Note, 73 Harv.L.Rev. 729, 753 (1960).
Through practical use, the derivative action in Louisiana has been used primarily for suing officers and directors for the breach of the duty of good faith and fiduciary duties. Then, the applicable standard of law, when questioning whether a corporate officer or director has breached this duty is LSA-R.S. 12:91, which provides:
Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and shill which ordinarily prudent men would exercise under similar circumstances in like positions. Nothing herein contained shall derogate form any indemnification authorized by R.S. 12:83.
Louisiana courts, when interpreting LSA-R.S. 12:91, have held that persons with a fiduciary duty "may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights" of the person or entity to which they owe that duty. Noe v. Roussel, 310 So.2d 806 (La.1975). The legal principle is recognized in Louisiana as the Business Judgment Rule. The Third Circuit interpreted this statute in Donaldson v. Universal Engineering of Maplewood, Inc., 606 So.2d 980 (La. App. 3 Cir.1992), wherein it cited Judge Plotkin, concurring in part and dissenting in part, in Dunbar v. Williams, 554 So.2d 56 (La. App. 4th Cir.1988):
The person acting in the fiduciary capacity bears the burden of establishing that his transactions were legitimate. Normat Industries Inc. v. Carter, 477 So.2d 783 (La.App. 5th Cir.1985). By law, the interested director must show not only that the action was fair to the corporation, but also that it was essentially an `arms length' *642 transaction. Quartana v. Jenks, 436 So.2d 1335, 1337 (La.App. 5th Cir.), writ denied 441 So.2d 1224 (La.1983); House of Campbell v. Campbell, 172 So.2d 727 (La.App. 4th Cir.1965).
The fiduciary is responsible for proving that his actions were in good faith and that he was guided by inherent fairness to the corporation. Woodstock Enterprises, Inc. v. International Moorings & Marine, Inc. 524 So.2d 1313 (La.App. 3 Cir.1988).
A controlling shareholder need not be a corporate officer, or member of the board of directors, as the United States Supreme Court stated in Pepper v. Litton, 308 U.S. 295, 306-307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939):
A dominant or controlling stockholder's power is a power in trust. His dealing with the corporation are subjected to rigorous scrutiny and where any of his engagements with the corporation is challenged, the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show it's inherent affirmance from the viewpoint of the corporation and those interested therein. His fair dealing is increased to the precise decree that his representative character has given him power and control derived from the confidence reposed in him by the stockholders who appointed him their agent. If he should be the sole director, or one of a smaller number vested with certain powers, this obligation would be still stronger and his acts subject to more severe scrutiny and their validity determined by more rigid principles of morality, and freedom from motives of selfishness.
The controlling shareholder owes the fiduciary duty to the corporation to protect its interests.

DISCUSSION
While both parties assert several assignments of error for this court's review, the critical issue before this court is whether the compensation and bonuses taken by Abry S. Cahn, Jr. and Abry S. Cahn, III, as fiduciaries, officers, and directors, between the years 1986-1992, were so unreasonable as to constitute a breach of the duty of good faith owed to the corporation and the minority shareholder.
Defendants argue that they attempted to meet their fiduciary duty; that the best interest of the corporation was to continue operations, although the local economy was in a depressed condition. They assert that the dividend suspension originated in 1981 with the corporations' redemption of the Henry Cahn's stock while Janice Cahn was a majority stockholder; that this continued after Mrs. Cahn's death due to the locality's depressed economic conditions, the necessity to maintain cash for corporate operations, and to maintain the company's bonding capacity; that Cahn Electric's experiencing net losses during the period of 1986-1992 does not lead to mismanagement of the corporation, and that the salary and bonuses were necessary for corporate officers to remain in the range of reasonableness for industry standards.
Further, defendants assert that the trial court applied the incorrect legal standard. The appropriate standard is comparative reasonableness enunciated in Fincher v. Claiborne Butane Company, Inc. 349 So.2d 1014 (La.App. 2 Cir.1977). Conversely, the plaintiff argues that Fincher involved a direct action to place the corporation in receivership. Fincher was based, in part, on the "corporation's dividend and salary policy and employment of the sons of the corporate president at $1,250 and $1,000 per month," a claim derivative in nature.
The defendants are correct that the standard is comparative reasonableness found in Fincher, supra. However, the trial court in its written reasons, succinctly outlines the disparity between the operating losses and the overall compensation that the Cahns were paid. It is well-settled that an appeal is taken from final judgment, not from written reasons for judgment that are the trial court's explanations of determinations made. It is, however, not improper for the Court of Appeal to consider written reasons for judgment in determining whether the trial court erred. State in the Interest of Mason, 356 So.2d 530 (La.App. 1st Cir.1977). *643 The lower court determined that the plaintiff's expert witness was more credible, and the overall compensation given to Abry and Tab was excessive in the amount of $200,000. After reviewing the record in its entirety, we cannot find that the trial court's determination is clearly wrong. See, Rosell v. ESCO, 549 So.2d 840 (La.1989).
When findings are based on determinations regarding the credibility of witnesses, the manifest-error clearly wrong standard demands great deference to the trier of fact's findings both express and implicit... In reviewing contrasting expert testimony, the trier of fact has the responsibility to determine which evidence is the most credible.
Next, we consider the comparative reasonableness of the bonuses paid to the Cahns. Bonuses and salaries of the directors between the years 1986-1992 were never expressly approved by the board of directors. Abry testified that he did not want to discuss bonuses in the presence of other employees who attended the monthly directors meetings, who were not directors. He did testify that he periodically reviewed the NECA table. The record is void of any formal documented approval by the corporation of the amount of the bonuses and salaries paid Abry or Tab. Plaintiff's counsel contacted Abry with Mrs. Hirsch's complaints of the amounts of compensation and bonuses that the Cahns received. After receipt of this letter, the Cahns continued to receive compensation and bonuses for $311,818.
This assignment of error is without merit.
Defendants' argue that the trial court failed to allow their respective job descriptions into the record. Abry and Tab testified at length on the various responsibilities of both men. The trial court did not abuse its discretion by disallowing the written documents.
This assignment of error is without merit.
Defendants' final assignment of error is that the trial court lacked the legal authority to order the corporation to declare a dividend. The defendants are incorrect. The court will not interfere in the affairs of a corporation at the instance of a stockholder and cause a distribution of a surplus, unless it is manifestly evident that interference is necessary in the interest of the corporation and its stockholders, and it must appear that there is capricious, arbitrary, or discriminating management. Marks v. American Brewing Co., 126 La. 666, 52 So. 983 (La.1910). The trial court's remedy is appropriate. Abry and Tab are the officers, and only members of the board of directors. Due to the discriminating management of Cahn Electric by Abry and Tab, coupled with the significant bonuses, the trial court did not err in requiring the corporation to pay a dividend with about two-thirds of the bonuses paid Abry and Tab which they were ordered to return to the corporation.
This assignment of error is without merit.
The plaintiff asks this court to increase the judgment against the Cahns to $397,000 to accommodate Abry Jr.'s correct bonus for 1986 which he claimed to be $60,000, and was actually $114,000. This appellate court may review the trial court's reasons for judgment. State in the Interest of Mason, supra. Our review convinces us that the trial court did not abuse its discretion in determining that the bonuses paid the Cahns were excessive by $200,000.
This assignment of error is without merit.

ATTORNEYS FEES and EXPERT WITNESS FEES
The judgment ordered Cahn Electric Co. to pay the attorney fees and expert witness fees incurred by Mrs. Hirsch, or $20,000 and $6,324.75, respectively. The judgment ordered Abry S. Cahn, Jr. and Abry S. Cahn, III, individually, to pay all attorneys fees, expert witness fees, and cost incurred by Cahn Electric Company Inc., in their defense. The Cahns urge that the trial court should have ordered the corporation to pay those expenses. They ask this court to enforce the indemnification rights to which they are entitled to under the corporate bylaws, and La.R.S. 12:83. Obviously, Mrs. Hirsch does not question the Cahns being ordered to pay attorneys fees. She argues that the Cahns should be individually responsible *644 for the attorney's fees, and expert witness fees incurred by Mrs. Hirsch.
La.R.S. 12:83 provides in pertinent part:
A. (1) A corporation may indemnify any person who was or is party or is threatened to be made a party to any action, suit, or proceeding, whether civil, criminal, administrative, or investigative, including any action by or in the right of the corporation, by reason of the fact that he is or was a director, officer, ... against expenses, including attorneys' fees, judgments, fines, and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit, or proceeding if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interests of the corporation,...
(2) However, in case of actions by or in the right of the corporation, the indemnity shall be limited to expenses, including attorneys' fees and amounts paid in settlement not exceeding, in the judgment of the board of directors, the estimated expense of litigating the action to conclusion, actually and reasonably incurred in connection with the defense or settlement of such action, and no indemnification shall be made in respect of any claim, issue, or matter as to which such person shall have been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom, to be liable for willful or intentional misconduct in the performance of his duty to the corporation, unless, and only to the extent that the court shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, he is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper.
While the trial court concluded in its reasons for judgment, that the Cahns deliberately excluded Mrs. Hirsch from deriving any benefit from the investment earnings of the corporation, a factual conclusion which is not clearly wrong on this record, we do not agree that the Cahns should be individually liable for their attorney and expert witness fees.
La.R.S. 12:83 states that the corporation may indemnify both parties for expenses. In view of all the circumstances of the case, including the fact that dividends ceased to be declared several years before Mrs. Hirsch inherited her shares, Abry S. Cahn, Jr. and Abry S. Cahn, III must be found to have had a reasonable belief in continuing that practice. We shall affirm the trial court's judgment requiring Cahn Electric Company to pay the attorneys fees for the expenses incurred by Mrs. Hirsch. We shall amend that part of the trial court's judgment requiring the Cahns, individually, to pay attorneys fees for the defense of the Cahns to assess only the corporation.
Plaintiff's counsel request additional attorneys' fees, covering the expenses of this appeal, asking that the Cahns bear such fees. Counsel has more than adequately complied with the ten factors outlined in State of Louisiana through the Department of Transportation and Development v. Williamson, 597 So.2d 439 (La.1992). When a complete record is before the court of appeal, this court must fairly and accurately determine the issues before us. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). Therefore, we award $7,500 in additional attorneys fees incurred by Marion Cahn Hirsch to be paid by Cahn Electric Co. for work done after the appeal of the case.
The record does not allow us to fairly determine the attorneys fees the corporation should pay defendants' counsel for the trial and for the appeal. We shall remand this action to the trial court to allow the litigants or the trial court to resolve the amount.

DECREE
The trial court's judgment is AMENDED to assess attorney's fees for the trial and appeal of plaintiff's and defendant's counsel against Cahn Electric Company, Inc.; Mrs. Hirsch being awarded $27,500 total as attorney fees. The matter is REMANDED to the trial court to allow the litigants or the court to determine attorneys fees to be awarded to the Cahns, and to implement this judgment, as amended. Otherwise and as amended, the judgment is AFFIRMED at cost of Cahn Electric Co. Inc.
*645 AMENDED IN PART; and as amended AFFIRMED. REMANDED.