PETERS, J.
|, Simone B. Guillory and Lamár B. Lo-presto brought a shareholders’ derivative action on behalf of Sam Broussard Trucking Company, Inc. against Samuel S. Broussard, Jr., the corporation’s president and majority shareholder. Simorie Guillo-ry now appeals the trial court’s grant of motions for involuntary dismissal which had the effect of dismissing all of the claims raised on behalf of the corporation. For the following reasons, we affirm the trial court’s judgment in all respects. '
DISCUSSION OF THE RECORD
Samuel Broussard Trucking Company, Inc. (“SBT”) is a family owned and operated business in New Iberia, Louisiana. Samúel Broussard,'Jr. and his three'sisters, Simone B. Guillory, Lamar B. Lo-presto, and Michelle B. Cart are all ■shareholders in SBT; ■ Ms. Guillory, Ms. Lopresto, and Ms. Cart each own ten percent of the corporate stock; and the remaining seventy percent is owned by Mr. Broussard and the -.SSB 2012 Family Trust No. 1 (Family Trust), a trust formed by Mr. Broussard. Mr. Brous-sard is the president of SBT, and both he and Ms. Cart serve on the corporation’s board of directors.[1]
This particular litigation began on June 27, 2012, with Ms. Guillory and Ms. Lo-presto filing a shareholders’ derivative action on behalf of the corporation.- Mr. Broussard, Ms. Cart, and' the corporation were initially named as defendants.[2] ■ Kurt Van Brocklin, as trustee of the Family Trust, was joined as a defendant by a | ^subsequent pleading. In their initial petition, Ms. Guillory and Ms. Lopresto asserted claims of breach of fiduciary duty, self-dealing, and abuse of control by Mr. Broussard. Subsequent pleadings resulted in additional factual allegations supporting the claim of breach of fiduciary duty by Mr. Broussard.[3]
The issues went to trial béginni’ng on October 20, 2014, with the issues before the trial court being narrowed down to three claims:' one concerning excessive compensation paid to'Mr. Broussard, one concerning his 'refusal to distribute profits, and one of unfáir trade practices. After Ms; Guillory presented- all of her evidence and rested her cáse, the defendants moved for involuntary dismissal of all of Ms. Guil-lory’s claims.. The trial court granted the defendants’ motions and dismissed all claims asserted by Ms. Guillory. After the trial court executed a December 3, 2014 judgment corresponding to its trial court judgment, and after the trial court rejected her motion for new trial on March 30, 2015, Ms. Guillory perfected the appeal now before us.,
In her appeal, .Ms, Guillory asserts two assignments of error:
*489 1. The trial court committed a reversible error of law in- granting involuntary dismissal by shifting, the burden of proof to the plaintiff shareholder in a derivative action when it-is the defendant’s [sic] burden to prove the compensation he intentionally set himself was in good faith, inherently fair to the corporation, and was essentially an < arm’s length transaction.
2. The trial court committed a reversible error of law in granting involuntary dismissal of Ms. Guillory’s claim that the intentional refusal of Mr. Broussard, Jr. to distribute profits of a corporation to its shareholders to coerce dismissal of shareholder lawsuits against him constitutes an unfair and deceptive trade practice under the Louisiana Unfair Trade Practices Act ([“]LUTPA”).
[.OPINION

Motion for New Trial

Ms. Guillory’s April 21, 2015 motion and order of appeal asserts that she appeals not only the trial court’s judgment granting the' motions for involuntary dismissal, but also the trial court’s denial of her motion for new trial. With regard to the issue of motion for new trial, this court held in Dietz v. Superior Oil Co., 13-657, pp. 3-4 (La.App. 3 Cir. 12/11/13), 129 So.3d 836, 839-40, that:
A'trialcourt’s decision to deny a motion for new trial is añ intérlocutory judgment subject to appeal for abuse of discretion only upon a showing of irreparable harm. Dural v. City of Morgan City, 449 So.2d 1047 (La.App. 1 Cir. 1984). However, “where a motion for appeal refers by date to the judgment denying a motion for new trial, but the circumstances indicate that the appellant actually intended to, appeal from the final judgment on the merits,'the appeal should be maintained as being taken from the judgment on the merits” Id. at 1048 (citing Smith v. Hartford Accident and Indemnity Company, 254 La. 341, 223 So.2d 826 (1969); Fruehauf Trailer Company v. Baillio, 252 La. 181, 210 So.2d 312 (1968); Kirkeby-Natus Corporation v. Campbell, 250 La. 868, 199 So.2d 904 (1967)).
Although Ms. Guillory asserted in her motion for appeal that she was appealing the trial court’s denial of her motion for new trial, she only briefed the issues pertaining to the trial court’s grant of the involuntary dismissal. Because the circumstances before us clearly establish that Ms, Guillory intended to appeal only the final judgment on the merits, we need not address the motion for new trial issue.

Motions for Involuntary Dismissal

The question of whether a proceeding may be the subject of a motion for involuntary dismissal is governed by the provisions of La.Code Civ.P. art. 1672(B), which states:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion' is not granted, may move for a dismissal of the ..action as to him on the [ ¿ground that upon the facts, and .law, the-plaintiff has shown no .right to relief. ■ The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
This court set out the standard of review applicable to the grant of a motion for involuntary dismissal in Touchet v. Hampton, 06-1120, pp. 3-4 (La.App. 3 Cir. 2/7/07), 950 So.2d 895, 898, where we stated that:
*490 “The trial court is granted much discretion in determining whether to grant an involuntary dismissal.” Boone v. Reese, 04-979, p. 5 (La.App. 3 Cir. 12/8/04), 889 So.2d 435, 438 (citing Kite v. Carter, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271). “The trial court’s grant of an involuntary dismissal is proper if, after weighing and evaluating all of the evidence that has been presented by the plaintiff, the trial court determines that -the-plaintiff has failed to prove his claim by a preponderance of the evidence.” Id. at 439. The granting of an involuntary dismissal is reviewed under the manifest error standard pf review. Id.
With these legal considerations in mind, we turn to review each of the trial court rulings on the motions for involuntary dismissal.

Excessive Compensation

One of Ms. Guillory’s primary complaints concerning Mr. Broussard’s abuse of his position of control within the corporation involved the amount of compensation he received for the services he rendered -to the corporation in his executive capacity. In most years, his total compensation exceeded $1,000,000.00 per year,[4] and Ms. Guillory asserted that the normal compensation for Mr. Broussard’s position would be in the range of $250,000.00.
In her first assignment of error, Ms. Guillory asserts that Mr. Broussard set his own compensation, and that he had the burden at trial to establish that his |ficompensation was set in good faith, was inherently fair to the corporation, and was set in an arm’s length transaction. She asserts- that the trial court improperly reversed that burden of proof by requiring her to show that it was excessive. In support of her position, she refers this court to the provisions of:La.R.S. 12:84 (repealed 2015) as that statute read at the time issue was joined in this litigation:[5]
A. No contract or transaction between a corporation and one or more of its directors or officers, or between a corporation and any other business, nonprofit or foreign corporation, partnership, or other organization in which' one or more of its directors or officers are directors or officers or have a financial interest, shall be void or voidable solely for this reason, or solely because the common or interested director or officer was present at or participated in the meeting of the board or committee thereof which authorized the contract or transaction, or solely because his or their votes were counted for such purpose, if:
(1) The material facts as to his interest and as to the contract or transaction were disclosed or known to the board of directors or, the committee, and -. the *491 board or committee in good faith authorized the contract or transaction by a vote sufficient for such;purpose without counting the vote of the interested director or directors; or
(2) The material facts as to his interest and as to the contract or transaction were disclosed or known to the shareholders entitled to vote thereon; and the contract or transaction was approved in good faith .by vote of the shareholders; or
(3) The contract or transaction was fair as to the corporation as of the time it was authorized, approved or ratified by the board of directors, committee, or shareholders.
B. Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board of directors or of a committee which authorized the contract or transaction.
I «Ms. Guillory asserts that Mr. Broussard was an “interested director,” as that term was used in La.R.S. Í2:84,[6] because he contracted with himself when setting his compensation as. president of SBT. She further argues that since Mr. Broussard had control over the majority of the board of directors, any approval that the board gave for - his compensation was -invalid; thus narrowing the issue to whether the compensation was fair to the corporation. According to Ms. Guillory, the issue of the fairness of the compensation is an affirmative defense which Mr. Broussard did not raise in his pleadings.
On the. one hand, Ms. Guillory asserts that based on the mere filing of her pleading, the trial court should have presumed that Mr. Broussard’s compensation was excessive, and that the burden was on him to prove that it was not excessive. On the other hand, Ms. Guillory actually presented expert testimony at trial in an attempt to establish that Mr. Broussard’s compensation was excessive.
In support of her argument that the initial burden’ of proof should have been placed on Mr. Broussard rather than her, Ms. Guillory cites this court to a number of cases which she claims supports her position. In one of .these cases, Noe v. Roussel, 310 So.2d 806, 818-19 (La.1975), the supreme court held that “an agent who acquires his principal’s property; or one who otherwise acts in a fiduciary capacity, bears the burden of establishing that the transaction was .an arm’s length affair.” Additionally, this, court, in Woodstock Enterprises, Inc. v. International Moorings & Marine, Inc., 524 So.2d 1313, 1317 (La.App. 3 Cir.1988), held that “[a]n interested director bears the burden' of proving his good faith in entering into a contract on behalf of his corporation as'well as the inherent fairness of such contract from the standpoint of the corporation.” In another case, Donaldson v. Universal Engineering of Maplewood, Inc., 606 So.2d 980, 988 (La.App. 3 Cir.1992) (citations' omitted), this court again held: “The person acting in the fiduciary capacity bears the burden of establishing thát his transactions were legitimate. By law, the interested director must show not only that the action was fair to the corporation, but also that it was essentially an ‘arms length’ transaction.” While we do not disagree with the rule of law asserted in these cases, we do not find that they support Ms. Guillory’s argument because in each ,of the, three cases, the plaintiffs presented evidence in support of *492 their ciatos before the burden shifted to the defendants to defend their actions.
Mr. Broussard and the-other defendants assert that only after Ms. Guillory established that Mr. Broussard’s compensation was excessive would the burden shift to them to prove that the compensation had been set in good faith, was fair to the corporation,' and was an arm’s length transaction; and that she failed’ in that burden. Thus, they argue, they were entitled to the involuntary dismissal because she failed in that burden. In support of their position, they rely on La.R.S. 12:91 (repealed 2015), as that statute read at the time issue was joined in this litigation, which provided: " •
A. Officers and directors shall be deemed to stand in a fiduciary relation to the corporation arid its shareholders, and shall discharge the duties-of -their respective positidns in good faith, and with that diligence, care, judgment^ and skill which ordinary prudent, men would . exercise under similar circumstances in like positions; however, a director. or-officer shall not be held personally liable .to the corporation or the shareholders thereof for monetary damages unless the director or officer acted in a grossly negligent manner as. .defined in Subsection B of this Section, or engaged in conduct which demonstrates a greater disregard of the duty of care than gross .negligence, including but not limited to intentional tortious conduct or intentional breach of his duty of loyalty. Nothing herein contained shall derogate'from any indemnification authorized by R.S. 12:83. .
B. As used in this Section, “gross negligence” shall be defined as a "reckless disregard of or a carelessness amounting to indifference to the best interests of the corporation or the shareholders thereof.
|SC. A director or officer who makes a business judgment in good faith fulfills the duty of diligence, care, judgment, and. skill under Subsection A of - this Section if the director or officer:
(1) Does not have a conflict of interest with -respect -to the subject of the business judgment.
(2) Is informed with respect to the subject of the business judgment to the extent the director or officer reasonably believes to be appropriate under the circumstances.
(3) Rationally believes that the business judgment is in the best interests of the corporation and its shareholders.
D. In fulfilling his duties under this Section, a director or officer is entitled to rely upon records and other materials and persons as specified -in R.S. 12:92(E).
E. A person alleging a breach of the duty of diligence, care, judgment, and skill owed by an officer or director under Subsection A shall have the burden of proving the alleged breach' of duty, including the inapplicability of the provisions as to the fulfillment of the duty under Subsections C and D and, in a dariiage action, the burden of proving that the breach was the legal cause of damage suffered by the corporation.
■ F. ■ The provisions of this Section shall apply to all business organizations, whether incorporated or unincorporated, formed under Louisiana law.
Mr." Broussard and the other defendants cite several cases to this court which they suggest' support their argument ón the shifting burden of proof. In Hirsch v. Cahn Electric Co., Inc., 29,327 (La.App. 2 Cir. 5/9/97), 694 So.2d 636, writ denied, 97-1561 (La.10/3/97), 701 So.2d 200, the second circuit upheld the trial court’s determination that the defendants received excessive compensation in that case. On the *493 issue of excessive compensation, the second circuit found that the trial court “determined that the plaintiffs expert witness was more credible,” which shows that the plaintiff in Hirsch presented evidence as to the excessiveness of the defendants’ salaries. Id. at 643. In Thornton ex rel. Laneco Construction Systems, Inc. v. Lanehart, 97-2871 (La.App. 1 Cir. 12/28/98), 728 So.2d 1127, writ denied, 99-177 (La.3/19/99), 740 So.2d 115, the first circuit upheld the 19involuntary dismissal of the plaintiffs claims in a shareholder derivative action on the issue of payment of dividends. The plaintiff in Thornton presented the testimony of two certified public accountants (“CPA” or “CPAs”) to support his claims, and the CPAs. testified that they “compared Laneco to other industrial contractors with relatively similar sales volume, using information from a statistical compilation published by [a data compilation company].” Id. at 1133-34. According to the first circuit, “[b]oth CPA’s [sic] concluded from their analyses of these comparisons that Laneco was paying its officers and directors too much and distributing too little to shareholders as dividends.” Id. at 1134. The trial court in Thornton questioned the data relied on by the CPAs and -ultimately held that “there has been no evidence presented to convince me that the plaintiff will prevail on that issue. And I will grant the motion for involuntary dismissal with regard to the payment of dividends.” Id.
With respect to the burden of proof ill this case, this court finds our decision in Duncan v. Moreno Energy, Inc., 13-668 (La.App. 3 Cir. 12/11/13), 129 So.3d 849, writ denied, 14-457 (La.4/17/14), 138 So.3d 629, to be informative and helpful. In Duncan, the defendant moved for involuntary dismissal at the end of the plaintiffs case, and the trial court granted the motion. Similar to our present case, the plaintiff in Duncan asserted on appeal that the trial court erred in placing the burden of proof on him, and that the defendants should have had the burden of proving that they “acquired th[e]. assets in good faith and that the transactions were entered into at arm’s length.” ,Jd. at 858. On the issue of the burden of proof as to the alleged breach of fiduciary duty in that case, this court .held:
Certainly, La.R.S. 12:91(E) places the burden of proof iñ a breách of fiduciary duty claim on- the person seeking to establish that claim. Additionally, however, - La.R.S. 12:84' sets forth certain standards by which an interested director may enter into a transaction beneficial to himself ,or herself. , In, this regard, a panel of this court |inhas explained that “£a]n interested director bears the burden of proving his good faith in entering into the contract as, well as the inherent fairness of the, contract from the. standpoint of the corporation. This requires the director to prove that the contract was essentially .an arm’s length transaction.” Church Point Wholesale Beverage Co., Inc. v. Voitier, 97-650, p. 9 (La.App. 3 Cir. 1/14/98), 706 So.2d 1015, 1019-20 (citing Noe [v. Roussell], 310 So.2d 806 [La.1975]; Woodstock Enter., Inc. v. Inter. Moorings & Marine, Inc., 524 So.2d 1313 (La.App. 3 Cir.1988)), writ denied, 98-0379 (La.4/9/98), 717 So.2d 1145.
Recall that this case was dismissed at the close of Mr. Duncan’s evidence. Even without the defendants’ presentation of their own evidence, the trial court’s ruling reflects its determinations that the transactions complained of by Mr..Duncan were justifiable and were not made with an intent to devalue Mr. Duncan’s shareholder- status in the company. As explained above; we find that the trial court’s ruling in this regard is supported by the record.
*494 Id. at 858-59 (first alteration in original) (footnote omitted). ■
■ We have neither been directed to, nor found, a case wherein a court held that the plaintiff satisfied their prima facie case by merely filing a pleading alleging a breach of the defendant’s fiduciary duty to the corporation. For that reason, we do not find that Ms. Guillory’s pleading alone is enough to shift the burden of proof to Mr. Broussard and the other defendants on this matter. We now turn to examine the evidence presented at trial by Ms. Guillory to determine if the trial court committed manifest error in granting the defendants’ motions for involuntary dismissal.
At the hearing three witnesses testified: Mr. Broussard, Ronald Lewis Gag-net, and Michael Lopresto;[7] and forty-nine exhibits were entered into evidence. Ms. Guillory’s primary argument oh appeal is that Mr. Broussard admitted, during his trial testimony, that a normal salary for his position would be $250,000.00, but that he was actually being paid over four-times that amount.
We find this assertion to be a mischarac-terization of Mr. Broussard’s ^testimony. Mr. Broussard repeatedly testified that the $250,000.00 figure was derived from a report compiled by the McClean Group, with his input, which was to be used as a tool to market SBT to prospective buyers.[8] According to Mr. Broussard, the $250,000.00 compensation figure was just a number that he and the McClean Group agreed to use, because they wére “normalizing” SBT’s expenditures.' While on direct examination of Mr. Broussard, Ms. Guillory’s 'trial counsel attempted to equate the term “normalizing” to what would be a “normal salary” for someone in Mr. Brous-sard’s position. However, Mr. Broussard made it clear in his testimony -that the term “normalizing” was used to indicate that SBT’s expenditures were being reduced down to bare-bones operating costs. In the McClean Group report, not only were- ML Broussard’s and other corporate executives’ salaries “normalized,” but expenses related to things like the company picnic and Christmas party were as well; because although SBT paid these kinds of expenses, a future purchaser would not necessarily incur those expenses. Essentially, the purpose of normalizing SBT’s expenses was to reduce the core expenses in order to show what it would cost to actually run the company.
Mr. Broussard explained that the $250,000.00 compensation figure was basically a place-holder number, one that would be used to market SBT to interested companies, and which could be adjusted up or down by an interested purchaser in calculating the worth of the company. We do not interpret Mr. Broussard’s testimony to be that he felt $250,000.00 was appropriate compensation for the work that he was doing at SBT. Nor do we find merit in Ms. Guillory’s argument that Mr. Broussard’s use of the $250,000.00 salary figure in the marketing report was proof that any compensation he received above that amount [1gwas excessive. We find that the choice of this number for use in the report by whomever is irrelevant to the issue of excessive compensation.
Ms. Guillory also relies on the testimony of Mr. Gagnet, a CPA with thirty years of experience, to establish that Mr. Broussard’s compensation was excessive to *495 such a degree that the burden of proof shifted to him to establish otherwise. Mr. Gagnet testified that he examined a U.S. Bureau of Labor Statistics report which found, that the average yearly salary for Chief Executive Officers was $210,000.00. Based on that research, the McClean Group report, and his thirty years of experience m filing tax- returns for businesses and individuals in Louisiana, Mr. Gagnet concluded that $250,000.00 would be reasonable compensation for Mr. Broussard. On cross-examination, Mr. Gagnet' admitted that he did not independently verify all of the figures in the McClean Group -report, and that he accepted the $250,000.00 figure as reasonable compensation because it was the number provided in the report. In fact, Mr. Gagnet’s opinion concerning the excessiveness of Mr. Broussard’s compensation 'was centered around the- assumption that $250,000.00 was the reasonable compensation for the position, and that he received excessive compensation any year his compensation exceeded that amount.
In granting the defendants’ motion for involuntary dismissal relating to the excessive compensation claim,, the trial court stated:
With regard to excessive compensation as I indicated earlier,, there’s no question but that Mr. Broussard intentionally set the amount of his compensation or had the amount of his .compensation set and this was an intentional action. The question is whether plaintiff proved that the compensation was excessive.
There’s no argument, no evidence challenging the amount of his compensation that is established by the W-2 forms and the 1099’s and other evidence indicating how those amounts were calculated and who paid those amounts. The question being was it excessive? And | isthat comes through the testimony of Mr. Gagnet.. He without question testified that in his opinion it was excessive.-. " .
The question is what is the basis of his opinion? Simply because a person is qualified as an expert and sits on the witness stand and gives an opinion the Court is not required to accept that opinion unless there' is a basis for that opinion.
After, noting Mr. Gagnet’s reliance on the U.S. Bureau of Labor Statistics report, his years of performing tax returns, and the McClean Group report, the trial court stated the following:
Those being the basis for Mr. Gag-net’s expert opinion, I do not find Mr. Gagnet’s expert opinion to be reliable. Therefore, find that the plaintiff has failed - to prove that the compensation paid to Mr. Broussard is excessive. I’m not saying that — it may well be excessive, but the plaintiff failed to prove it and therefore, I will grant the Motion for Involuntary Dismissal regarding the exeessiveness of the compensation[.]
We find no manifest error in the trial court’s factual conclusions in this regard and we find no error in its grant of the defendants’ motion for involuntary dismissal on the issue of excessive compensation.

Unfair Trade Practices Act and Distribution of Profits

Ms. ‘Guillory’s second assignment of error asserts that the trial court erred when it failed to find that Mr. Broussard’s attempt to coerce the shareholders into dropping their lawsuit by refusing to distribute SBT’s profits constituted a violation of the Louisiana Unfair Trade Practices and Consumer Protection ' Law (LUTPA), La.R.S. 51:1401, et seq.
*496 Ms. Guillory’s argument on this -issue is not that Mr. Broussard has - committed “[ujnfair methods. of competition!,]” but rather that he has committed “unfair or deceptive acts or practices, in the conduct of any trade or commerce!)]” La.R.S. 51:1405. Ms. Guillory argues that, “trade” or “commerce,” as defined in La.R.S. 1402(10), includes the “distribution of any services and any property ... or thing of value[,]” which, she argues, includes the distribution of a corporation’s |uprofits. She further asserts that she has a private right of-action against the defendants, per La.R.S. 51:1409(A), which states in pertinent part: ' ■ '
Any person who suffers' any[1] ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another, per-áon of an unfair or deceptive- method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually-but not in a representative capacity to recover actual damages.
This assertion is supported by Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 09-1633, p. 6 (La.4/23/10), 35 So.3d 1053, 1057, in which a plurality of the supreme court found that “LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person’s use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.”
Mr. Broussard and the other defendants argue, on the other hand, that Ms. Guillo-ry’s interpretation of LUTPA would turn the statute into * a general tort statute. They argue that LUTPA does not apply in a situation where a stockholder brings a “garden variety suit” against a corporation’s manager, and cite this court to Quality Environmental Processes, Inc., v. I.P. Petroleum Co., Inc., 13-1582, 13-1588, 13-1703 (La.5/7/14), 144 So.3d 1011, to support their argument that'LUTPA does not-apply to situations- like the present case. In .that case, the supreme court held:
■- In LUTPA, the legislature declared it to -be unlawful * to • engage in -“unfair ..methods of competition and unfair or deceptive acts -or practices in the conduct -of any trade or commerce.” • La. Rev.Stat. § 51: 1405. Because of the broad ■ sweep of -this language, “Louisiana. courts- determine what .is a LUTPA . .violation on-a case-by-case basis.” Keith i. E. Andrews, Comment, Louisiana Unfair. Trade Practice$ Act: Broad Language and,Generous Remedies Supplemented by a■ Confusing Body of Case ..Law, 41 Loy. L.Rev. 759, 762 (1996) • (hereinafter “Andrews”). This court has consistently held that in establishing a LUTPA claim, a plaintiff must show that . “the alleged, conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.” Cheramie Services, Inc. v. Shell Deepwater Prod., 09-1633, p. 11 (La.4/23/10), 35 So.3d 1053, 1059. “[T]he range of prohibited practices under LUTPA is extremely*'narrow,” as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. Id. at 11, 35 So.3d at 1059; Andrews, 41 Loy. L.Rev. at 763. Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUT-PA. See, e.g., Cheramie Services, 09-1633 at 12, 35 So.3d at 1060 (“[0]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.”); Vermilion Hosp., Inc. v. Patout, 05-82, p. 6 (La.App. 3 Cir. 6/8/05), 906 So.2d 688, 693 (noting that not all violations of the Louisiana Code of Ethics give rise to a cause of action under LUTPA and that per *497 sons aggrieved by such violations of the code of ethics are permitted to file a complaint with the Louisiana Board of Ethics or seek remedies under other statutes).
Notably, LUTPA was modeled after the Federal Trade Commission Act (hereinafter “FTC Act”), and the two acts share the same goals: to protect consumers and to foster competition. See Andrews, 41 Loy. L.Rev. at 777. Specifically, these goals include halting unfair business practices and sanctioning the businesses .which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry. See, e.g., Slough v. Fed. Trade Comm’n, 396 F.2d 870 (5th Cir.1968), cert. denied, 393 U.S. 980, 89 S.Ct. 448, 21 L.Ed.2d 440 (1968) (“The aim of the [Act] is to stamp out unfair business practices and businesses which persist in practicing them.”); United States v. St. Regis Paper Co., 355 F.2d 688 (2d Cir. 1966) (noting that the policy of the FTC Act is to promote and preserve competition); Northam Warren Corp. v. Fed. Trade Comm’n, 59 F.2d 196 (2d Cir.1932) (“[The purpose of the-Act] is to strike down at their inception practices which are unfair and which, if permitted to run their full course, would, result in the creation of a monopoly and an undue restraint of trade.”).
Id. at 1025-26 (alteration in original).
Ms. Guillory presented no evidence at trial to establish that a failure to distribute profits in the form of shareholder dividends is an unfair or deceptive act committed in the conduct of any trade or commerce. On the motion for involuntary dismissal on the issue of distribution of profits, the trial court held that “although, the evidence does indicate that Mr. Broussard intentionally did not distribute the profits ... there was-a valid business reason for not distributing them; 'Therefore, he did not violate his fiduciary duty.”
liaWith regard to the LUTPA issue, the trial court referenced La.R.S. 51:1405(A), which holds that “[u]nfair methods of competition and unfair' or deceptive acts or practices in the conduct of . any trade or commerce are hereby declared unlawful,]” and then noted the definitions set forth in La.R.S. 51:1402(10):
“Trade” or “commerce” means the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or -thing of value wherever situated, and includes any trade or com-meree directly or indirectly affecting the people of the state.
The trial "court then went on to state:
Considering that definition of “trade and commerce” it is this Courts [sic] opinion that that does not include the distribution or failure to distribute profits by á’corporation to its shareholders. Therefore, it’s this Courts [sic] opinion that the unfair trade practices and unfair consumer protection law do not apply to this situation .:. and, therefore, I will grant the Motion' for Involuntary Dismissal for any'claims under the [Unfair Trade Practices and Consumer Protection Law].
Based on the lack of evidence presented at trial on this issue, we find no manifest error in the trial court’s grant of the defendants’ motion of involuntary dismissal.
DISPOSITION
For the foregoing reasons, we affirm the decision of the trial court granting the motions for involuntary dismissal brought by Samuel Broussard, Jr., Michelle Cart, *498 Kurt Van Brocklin, as -Trustee of the SSB 2012 Family Trust No. 1, and Sam Brous-sard Trucking Co„ Inc. on Simone Guillo-ry’s claims of breach of fiduciary duty due to excessive compensation and violation of the Louisiana Unfair Trade Practices Act for failure to distribute profits. We assess all costs of this appeal to Simone Quillory.
AFFIRMED.
CONERY, J., dissents and assigns • reasons.

. Prior to the beginning of the disputes and disagreements giving rise to the filing of this 'suit, all three sisters served on the board of directors with their brother. However, at a September 1, 2011 shareholders’ meeting, Mr. Broussard had Ms. Guillory and Ms. Lo-presto removed as directors, and replaced them with his three daughters: Ashley, Danielle, and Victoria Broussard.

. The original petition asserts that Ms. Cart was joined as a defendant pursuant to La. Code Civ.P. art. 615 because she refused to join in the shareholders' derivative action; and that the, corporation was being joined as a nominal defendant as required by La. Code Civ.P. art. 615.

.On July 17, 2013/ Ms. Lopresto filed a motion to be dismissed as a plaintiff in the suit, and the trial court granted the motion the same day. However, at the request of all parties, she rejoined the litigation by filing an intervention petition. The trial court granted her intervenor status' by an order dated May • 14,2014.

. Mr. Broussard testified at trial that he manages several separate companies under the SBT umbrella. To save on overhead and administrative' costs, SBT manages all of the accounts for all of the companies under its umbrella. This means that SBT technically pays Mr, Broussard’s salary for all of the companies it manages; however, ’ SBT charges the portion of Mr. Broussard’s salary attributable to each company back to it. Therefore, while SBT may cut the check for Mr. Broussard’s salary, every company repays SBT the amount of his salary, plus a 14% processing fee.

. By 2014 La. Acts No. ,328, .§ 1, the Louisiana Legislature enacted La.R.S. 12:1-101 to - 12:1-1704 to comprise Chapter 1 of the Business Corporation Act of Title 12 of the Louisiana Revised Statutes. At the same time, by 2014 La. Acts No. 328, § 5, the Louisiana Legislature repealed former Chapter 1 of the Business Corporation Law, consisting of La. R.S. 12:1 to 12:178, as well, as La.R.S. 12:1605,to 12:1607.

. Unless stated to the contrary, all references to the Business Corporation Law in this opinion will refer to that version of .the Business Corporation Law in effect at the time of the complained of actions.

. ■ Mr. Lopresto did riot testify as to the exces-siveness or reasonableness of Mr. Broussard’s ‘ salary.

. Much of the trial testimony on this issue was Ms. Guillory's counsel attempting to establish that Mr. Broussard, and not the McClean Group, choose the salary figure.

. Separate litigation was filed in connection with this claim along with other allegations, and an appeal of a jury verdict is pending in that case before a different panel of this court. CA-15-888 appeal from trial court No. 119923,-Div. F.