# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 16-986

**STATE IN THE INTEREST OF**

**K.M., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 28222
HONORABLE W. MITCHELL REDD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## VAN H. KYZAR
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of D. Kent Savoie, Van H. Kyzar, and David E. Chatelain,[*] Judges.

**REVERSED.**

---

[*] Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

D. Shunette Thomas-Jordan
1025 Mill Street
Lake Charles, LA 70601
(337) 564-6990
COUNSEL FOR DEFENDANT/APPELLANT:
 K.S. (mother)

Amy E. McGray
Child Advocacy Center
One Lakeshore Drive, Suite 1585
Lake Charles, LA 70601
(337) 491-2461
COUNSEL FOR PLAINTIFFS/APPELLEES:
 K.M. (child)
 C.M., Jr. (child)
 Wa.St. (child)
 A.S. (child)
 Kr.S. (child)
 W.S. (child)

J. Wade Smith
P. O. Box 1706
Lake Charles, LA 70602
(337) 436-8424
COUNSEL FOR DEFENDANT/APPELLEE:
 W.St. (father)

Mike K. Stratton
Public Defender's Office
P.O. Box 3757
Lake Charles, LA 70601-3757
(337) 436-1718
COUNSEL FOR DEFENDANT/APPELLEE:
 C.M., Sr. (father)

Bethany Blackson
Assistant District Attorney
Fourteenth Judicial District
901 Lakeshore Drive
Lake Charles, LA 70601
(337) 437-3400
COUNSEL FOR PLAINTIFF/APPELLEE:
 State of Louisiana
 Department of Children & Family Services

**KYZAR, Judge.**

The defendant, K.S.,[2] appeals from a judgment adjudicating her and two of her children as being a family in need of services and granting permanent custody of two other children to their father, despite finding that none of the children were children in need of care. On considering the record before us, we reverse the judgment of the trial court.

## DISCUSSION OF THE RECORD

K.S. is the mother of six minor children: C.M., Jr. and K.M., who were born as a result of her former marriage to C.M., Sr., and Wa.St., A.S., Kr.S., and W.S., who were born as a result of her relationship with W.St. The two youngest children, Kr.S., born July 16, 2014, and W.S., born September 13, 2015, were both delivered prematurely and suffer from significant health issues. On October 23, 2015, a complaint of neglect was filed with the State of Louisiana, through the Department of Children and Family Services (the State), resulting in an oral instanter order being issued by the trial court, placing the six children in the State's custody.

On October 26, 2015, the State filed a petition seeking to have all six children declared to be in need of care, pursuant to Title VI of the Louisiana Children's Code. The allegations centered primarily on K.S.'s medical neglect of her two youngest children. At a continued custody hearing that same day, K.S. denied all of the State's allegations, but agreed to the State's continued custody of the children. At the close of the hearing, the trial court placed Wa.St., A.S., Kr.S., and W.S. in the temporary custody of the state, while K.M. and C.M., Jr. were placed in the temporary custody of their father, C.M., Sr., all pending the

---

[1]The initials of the children and their parents are used to protect the identity of the minor children. Uniform Rules—Courts of Appeal, Rules 5-1, 5-2.

adjudication hearing. Judgment continuing the children in the State's custody was rendered on April 7, 2016.

The two-day adjudication hearing concluded on August 5, 2016. At the close of the State's case, K.S. moved for an involuntary dismissal of its claims, which the trial court took under advisement. On August 15, 2016, the trial court issued written reasons for judgment in which it granted in part and denied in part K.S.'s motion for involuntary dismissal. The trial court held that the State failed to prove that Wa.St. and A.S. were children in need of care or in need of services and dismissed the State's claims as to those children. The trial court also held that the State failed to prove that Kr.S. and W.S. were children in need of care, but held that the State's evidence might be sufficient to adjudicate them as a family in need of services. Thus, the trial court denied K.S.'s motion as to these children and continued the matter for trial on the issue of family in need of services. Finally, the trial court ordered that C.M., Sr.'s temporary custody of K.M. and C.M., Jr. become permanent, subject to reasonable visitation by K.S. and ordered that the State be released from its supervision of those children.

Thereafter, at the August 17, 2015 hearing on the family services issue, the trial court reiterated that it was granting in part and denying in part K.S.'s motion for involuntary dismissal. It dismissed the State's petition as it related to Wa.St. and A.S. and ordered the children returned to K.S.'s custody. The trial court further dismissed the State's petition as it related to K.M. and C.M., Jr., but granted permanent custody of the children to their father, C.M., Sr. At the conclusion of these rulings, the trial court asked how the parties wished to proceed on the family services issue in regards to Kr.S. and W.S. All of the parties rested at that time. The trial court then ruled that Kr.S. and W.S. were in need of family services and

2

ordered that a family services plan be prepared for the children. An adjudication judgment was rendered by the trial court on August 25, 2016. An amended adjudication judgment was rendered on August 26, 2016. This appeal followed. K.S. is the only party who has appealed from the trial court's judgment.

**OPINION**

On appeal, K.S. asserts two assignments of error committed by the trial court. They are as follows:

1. The trial court erred in denying, in part, [K.S.'s] motion for involuntary dismissal pursuant to *La. C.C. Art. 1672*, because the State failed to meet its burden of proof in proving neglect such as to warrant an adjudication of any of the children being children in need of care. The State also failed to prove by a preponderance of the evidence that the family was a family in need of services as required by *La. Ch. C. Art. 666 and La. Ch. C. Art. 730* respectively. Absent a finding of neglect or that the family is a family in need of services, the trial court was without jurisdiction to render a judgment of custody, and thus erred in granting permanent custody of [K.M.] and [C.M., Jr.] to their father [C.M., Sr.]

2. The trial court erred in adjudicating the children [Kr.S.] and [W.S.] as a family in need of services, in that there is no evidence in the record to support such a ruling.

**OPINION**

The procedural device of involuntary dismissal, as it pertains to bench trials, is found in La.Code Civ.P. art. 1672(B), which provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

A trial court is entitled to great discretion in weighing and evaluating the evidence in determining whether the plaintiff has proven its case by a

3

preponderance of the evidence. *Guillory v. Broussard*, 15-953 (La.App. 3 Cir. 5/4/16), 190 So.3d 486, *writ denied*, 16-1045 (La. 9/16/16), 206 So.3d 884. The trial court's grant or denial of a motion for involuntary dismissal is reviewed pursuant to the manifest error standard of review. *Id.*

The grounds for finding that a child is in need of care are set out in La.Ch.Code art. 606, as follows:

A. Allegations that a child is in need of care must assert one or more of the following grounds:

(1) The child is the victim of abuse perpetrated, aided, or tolerated by the parent or caretaker, by a person who maintains an interpersonal dating or engagement relationship with the parent or caretaker, or by a person living in the same residence with the parent or caretaker as a spouse whether married or not, and his welfare is seriously endangered if he is left within the custody or control of that parent or caretaker.

(2) The child is a victim of neglect.

(3) The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.

(4) As a result of a criminal prosecution, the parent has been convicted of a crime against the child who is the subject of this proceeding, or against another child of the parent, and the parent is now unable to retain custody or control or the chs welfare is otherwise endangered if left within the parent's custody or control.

(5) The conduct of the parent, either as principal or accessory, constitutes a crime against the child or against any other child.

(6) The child is a victim of human trafficking or trafficking of children for sexual purposes.

> *Subpar. (A)(7) effective when a child, who is a victim of commercial sexual exploitation, human trafficking, or trafficking of children for sexual purposes perpetrated by someone other than a parent or caretaker, becomes an eligible victim for which federal match funds are available through Title IV-E of 47 U.S.C. 672*

4

(7) The child is a victim of commercial sexual exploitation, human trafficking, or trafficking of children for sexual purposes perpetrated by any person regardless of their relationship to the child.

B. A child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care.

The State presented the testimony of five witnesses during the adjudication hearing. The first to testify was Kasey Blagrave, a investigator with the Department of Child and Family Services (DCFS), who testified that she was assigned to investigate an October 22, 2015 report of alleged neglect—failure to thrive (non-organic), neglect—medical neglect, neglect—dependency, neglect—lack of adequate supervision, and neglect—dependency regarding K.S.'s youngest two children, Kr.S. and W.S. She said that there were no reports of neglect, medical or otherwise, as to the other four children.

Upon concluding her investigation, Blagrave indicated that DCFS felt that due to K.S.'s alleged history of non-compliance with the agency stemming from a previous closed case and because the two younger children were diagnosed as failure to thrive, they were in danger of not being cared for properly. Blagrave also testified that the family had previously been involved in family services and that the case was closed for non-cooperation. She stated that she did not know if K.S. voluntarily participated in that case, and she agreed that if the agency had concerns regarding any sort of neglect or abuse at that time, it would have filed a petition to adjudicate K.S.

Blagrave further testified that there were no allegations regarding a lack of adequate housing or food, no allegations of abuse towards any of the children, and that the children, including Kr.S., appeared to have everything they needed. She admitted that there were no complaints of medical neglect as to any of the children

5

from any physician or nurse involved in the care of the children. In addition, Blagrave raised an issue regarding lack of supervision for the children, but clarified that the allegation of lack of supervision only pertained to W.S., who had allegedly been left in his hospital room on one occasion for approximately 10 minutes, without K.S. notifying the nurses.

Dr. Caroline Courville, a pediatrician, testified that she began treating Kr.S. on September 30, 2015, and that Kr.S., who was fourteen months old and weighed fourteen pounds, was diagnosed with "failure to thrive." She described failure to thrive as being synonymous with the inability to gain weight and that the diagnosis is "ascribed to a child that has difficulty staying on their growth curves." She explained that there were basically two categories of failure to thrive, organic and non-organic. Organic failure to thrive was connected with some internal illness, while the more common non-organic failure to thrive is typically related to a lack of or deficiency in caloric intake. She stated that a diagnosis of failure to thrive did not equate to neglect, although it could be a factor along with other causes. Although she did not say that she believed Kr.S.'s failure to thrive was due to K.S.'s neglect, she testified that it appeared to be based on her failure to receive the proper nutrition she needed to gain weight. Dr. Courville testified that she became involved with Kr.S. on a referral from PediaTrust Lake Charles (PediaTrust), a daycare for medically fragile children where Kr.S. was enrolled.

Kathleen McFarlain, a pediatric nurse at PediaTrust, testified that Kr.S. entered that program per her doctor's referral due to her diagnosis of failure to thrive and that she had been doing well since then. There was no testimony by Ms. McFarlain that she believed Kr.S.'s failure to thrive was due to K.S.'s neglect, nor did she indicate that this was the belief of the referring doctor.

Elizabeth Phillips, a neonatal nurse practitioner for Lake Charles Memorial Hospital, testified that she was involved in W.S.'s care while he was hospitalized there, having been born extremely prematurely at twenty-nine weeks. She stated that he was born with a hole in his heart and was hospitalized for forty-one days in 2015. She provided testimony as to W.S.'s medical condition, her observations of K.S. on two separate occasions, and as to how many times K.S. visited with W.S. while he was in the hospital. She indicated that K.S. visited with W.S. on five occasions and called twice, but she admitted that the nurses did not always document every visit by a parent or guardian. She described two incidents involving K.S. that gave her some concern. On October 14, 2015, she observed that K.S. was somewhat fragmented in her thoughts and seemed very confused. However, she admitted that the incident did not lead her to contact DCFS with any complaints or concerns. She also related an incident on October 21, 2016, where she observed that K.S. was very upset and crying, apparently due to an argument with W.S.'s father. At some point that same day, she allegedly discovered that K.S. left W.S. alone in his hospital room for approximately 10 minutes without telling the staff, although he was monitored electronically the entire time. Nurse Phillips, when asked about the child's condition after she discovered that he had been left alone, stated, "The baby was fine." It was on this date that the State received its complaint.

The last witness for the State was Leslie Muslow, a DCFS Child Welfare Specialist, who testified that as the foster care worker, she supervised the children in the five months leading up to the hearing. Thus, she offered no evidence relative to K.S.'s alleged neglect of the children.

At the conclusion of the State's case, K.S. moved for an involuntary dismissal of its claims pursuant to La.Code Civ.P. art. 1672(B). After taking the matter under advisement, the trial court granted the motion in part after specifically finding that the State failed to present sufficient evidence that would warrant an adjudication of child in need of care as to K.M., C.M., Jr., A.S., and Wa.St., and dismissed the State's claims as to those children. However, the trial court denied the motion in part by adjudicating Kr.S. and W.S. as a family in need of services, deferring to a later hearing to determine a family services plan, and by granting permanent custody of K.M. and C.M., Jr. to C.M., Sr.

In adjudicating Kr.S. and W.S. as a family in need of services, the trial court applied La.Ch.Code art. 666, which provides

> A. Following the adjudication hearing, the court shall immediately declare whether the evidence warrants a child in need of care adjudication. In exceptional circumstances, the court may take the matter under advisement for a period not to exceed ten days.

> B. If the evidence demonstrates that the child's family is in need of services, the court may adjudicate the child's family to be in need of services and proceed to a disposition in accordance with Chapters 10 and 12 of Title VII.

> C. If the court finds that the evidence does not warrant an adjudication that either the child is in need of care or the family is in need of services, it shall dismiss the petition.

While La.Ch.Code art. 666(B) authorizes a trial court to adjudicate a child's family to be in need of services, this adjudication is only proper if the State proves by a preponderance of the evidence that the family is, in fact, a family in need of services. La.Ch.Code art. 770. Furthermore, a family is a family in need of services only if one or more of the statutory grounds for such exist. The grounds for adjudicating a family in need of services are exclusive, as directly provided for in La.Ch.Code art. 749, which states that the petition to declare a family to be in need

8

of services "shall aver one or more of the grounds set out in Article 730." Louisiana Children's Code Article 730 sets forth only ten grounds upon which an adjudication of a family in need of services can be based:

> (1) That a child is truant or has willfully and repeatedly violated lawful school rules.

> (2) That a child is ungovernable.

> (3) That a child is a runaway.

> (4) That a child has repeatedly possessed or consumed intoxicating beverages, or that he has misrepresented or deceived his age for the purpose of purchasing or receiving such beverages from any person, or has repeatedly loitered around any place where such beverages are the principal commodities sold or handled.

> (5) That a child has committed an offense applicable only to children.

> (6) That a child under ten years of age has committed any act which if committed by an adult would be a crime under any federal, state, or local law.

> (7) That a caretaker has caused, encouraged, or contributed to the child's behaviors enumerated in this Article or to the commission of delinquent acts as defined in Title VIII.

> (8) That, after notice, a caretaker has willfully failed to attend a meeting with the child's teacher, school principal, or other appropriate school employee to discuss the child's truancy, the child's repeated violation of school rules, or other serious educational problems of the child.

> (9) That a child has been found incompetent to proceed with a delinquency matter under Article 832 et seq.

> (10) Repealed by Acts 2012, No. 730, § 2.

> (11) A child found to have engaged in cyber bullying.

In the instant case, there was absolutely no evidence establishing, by a preponderance of the evidence, any of the above-listed grounds. None of the testimony elicited from the witnesses related in any way to the provisions of La.Ch.Code art. 730. Accordingly, we find that the trial court erred in denying in

9

part K.S.'s motion for involuntary dismissal by adjudicating Kr.S. and W.S.'s family a family in need of services.

We further find that the trial court erred in denying in part K.S.'s motion for involuntary dismissal by granting permanent custody of K.M. and C.M., Jr., to their father, C.M., Sr. At the initial continued custody hearing on October 26, 2015, K.S. denied all of the allegations contained in the State's petition, but agreed to the State's continued custody of the children. The trial court then granted temporary custody of K.M. and C.M., Jr. to C.M., Sr., pending the adjudication hearing. However, in its August 15, 2016 written reasons for judgment, the trial court made the temporary custody agreement with C.M., Sr. permanent, released the State from supervision of K.M. and C.M., Jr., and granted K.S. reasonable visitation. The trial court confirmed its decision during the August 17, 2016 family in need of services hearing, at which time K.S. objected to the order. Nevertheless, when granting permanent custody to C.M., Sr., the trial court made no finding that the children were in need of care or that they were a family in need of services.

We agree with the trial court that the evidence failed to establish that K.M. and C.M., Jr. were children in need of care, and thus, dismissal of the petition as it related to them was warranted. The trial court mentioned in its August 15, 2016 written reasons that the fact that K.S. had six children potentially in her care, with two of them receiving special medical attention, was a factor which led to the potential adjudication of the family being a family in need of services. However, the trial court made no such finding that these two children were a family in need of services. To the contrary, the trial court earlier dismissed the petition as it related to K.M., C.M., Jr., Wa.St., and A.S., finding only that the family was a family in need of services with regards to Kr.S. and W.S. As stated previously,

10

La.Ch.Code art. 730 provides specific, exclusive grounds for the adjudication of a family in need of services, and none of those grounds were alleged or proven here by the State as to any of K.S.'s six children. Furthermore, we agree with K.S. that absent a finding that K.M. and C.M., Jr. were children in need of care or a family in need of services, the trial court lacked jurisdiction to award permanent custody of the two children to C.M., Sr.

Accordingly, for the reasons set forth, we find that the trial court was manifestly erroneous in denying in part K.S.'s motion for involuntary dismissal, and we reverse the judgment of the trial court that Kr.S. and W.S. are a family in need of services, dismissing all proceedings in connection therewith. We further reverse the judgment of the trial court granting permanent custody of the minor children, C.M., Jr., and K.M., to their father, C.M., Sr., directing that the custody of the children be returned to K.S. Based on these findings, we render judgment in favor of K.S., granting an involuntary dismissal of the State's claims.

## DISPOSITION

The trial court correctly determined that the evidence failed to show that any of the children of K.S. were in need of care, and it is apparent that the trial court also wished to assist this mother of six children, two of which have significant medical issues, with the determination that they were in need of services as to those two children. However, in doing so, the trial court stretched the boundaries of La.Ch.Code art. 730 beyond those legally prescribed. Accordingly, and for the reasons set forth herein, the judgment of the trial court adjudicating Kr.S. and W.S. a family in need of care and granting permanent custody of K.M. and C.M., Jr. to C.M., Sr. is reversed. We further render judgment in favor of K.S., granting an

11

involuntary dismissal of the State's claims against her and order that custody of K.M. and C.M., Jr. be returned to K.S.

**REVERSED.**

12